HENRY E. SCHRADER, Trustee, Appellee, *vs.* EDWARD C. KEHR *et al.* Appellants.

*Opinion filed April 23, 1908—Rehearing denied June 5, 1908.*

SURVEYS—*commission of surveyors, under act of 1901, can do nothing but establish lost corners.*    Where the corners established by the government survey of lands bordering on a river have been lost by the encroachments of the river, which subsequently so recedes as to leave accretions beyond the line of the original survey, a commission of surveyors appointed under the act of 1901 (Laws of 1901, p. 307,) have power only to establish the lost corners and not to divide the accretions among the owners, and the latter must resort to an action at law to determine that question after the lost corners are established.

APPEAL from the Circuit Court of St. Clair county; the Hon. B. R. BURROUGHS, Judge, presiding.

Henry E. Schrader filed his petition in the circuit court of St. Clair county under the act of 1901, entitled "An act to provide for the permanent survey of lands." All the lands involved are a part of the common fields of Prairie du Pont, the title to which was originally granted to certain missionaries of the Roman Catholic church by the king of France, and extended from the Mississippi river, southeastwardly, to the bluff. This ground was subdivided by the missionaries and conveyed in fee simple to individual owners, and their title was subsequently confirmed by the United States. The subdivisions were narrow strips of land extending from the bluffs northwesterly to the Mississippi river as it then existed. The surveys of these subdivisions were numbered and the subdivision known by the number of the survey. Appellee, the petitioner, owned surveys Nos. 149 to 156, inclusive. Appellant Hermann owned surveys 146 and 147, and appellants Kehr and Pitzman owned survey 148. The Franklin Bank and Riddle owned surveys 157 to 166, inclusive. Survey 148, owned by Kehr and Pitzman, was north-east of and lay adjoining and parallel with survey 149, owned by Schrader, and surveys 146 and 147, belonging to Hermann, joined Kehr and Pitzman's directly on the north-east and lay parallel therewith. The lands owned by appellee, Schrader, known as surveys 149 to 156, inclusive, joined Kehr and Pitzman's and lay parallel therewith on the south-west.

The petition alleges that before the title to said surveys was confirmed in the owners the United States caused the tracts to be surveyed and the lines and corners to be established; that the side lines were extended by straight extensions from the bluffs north forty-one degrees and twenty seconds west to the Mississippi river as the river then existed, and the north-westerly line of said surveys was meandered on and along the Mississippi river and corners for said surveys established; that the Mississippi river formed the north-westerly boundary of said surveys. The petition

avers that by the establishment of the Mississippi river as a boundary the side lines of all the surveys extended to the middle line or thread of said stream, although they were actually run and surveyed only to the bank of the river. The petition further avers that after said lines and corners were run and established the current of the river changed to the eastward, and the bank, which formed the front of all the surveys when they were made, was by the action of the water cut and washed away and submerged to the extent of about one thousand feet back from the bank of the river as it existed at the time the original survey was made, and the lines and corners were washed away, destroyed and lost. The petition further alleges that subsequently the current of the river changed to the west or north-west and the waters receded from the newly formed eastern bank or shore and the thread of the stream shifted much further north-west than it had been before the surveys were made, and a large amount of alluvion was deposited on the eastern side of the river within the lines of said surveys, and this extended almost to the middle of the river as it existed at the time the original surveys were made and lines and corners established. The petition prayed for the appointment of a commission of surveyors to survey and permanently establish the corners and boundaries of the lands described.

The government's surveys of these lands from the bluff to the bank of the river and along the river front is known as Rector's survey of 1814. After that time the current of the river changed to the eastward, and in 1884 it reached the farthest point in that direction. This was a little more than one thousand feet east or south-east from the original bank, and in making this change a large amount of land was submerged and washed away that was included within the lines run by the government survey. The place marking the bank of the river as it existed in 1884 is called the "old high bank of 1884." After 1884 the current changed back to the westward far beyond the current as it existed when

the government survey was made, and the easterly bank of the river is now about one hundred and sixty rods further west than it was when the government survey was made.

The real dispute between the parties is as to the ownership of and the proper rule for the division, between the co-terminous riparian owners, of the accretions formed between the old high bank of 1884 and the present bank of the river. The parties are agreed that co-terminous riparian owners owned the land to the center of the stream and that the side lines of their respective tracts should be extended from the bank of the stream, at right angles with its middle thread, to the center of the stream. As the side lines of the surveys ran in a north-westerly direction and the river in a direction somewhat west of south, it will be seen that the extension of the side lines at right angles with the thread to the center of the stream would be nearly west. Appellants contend that this extension of the side lines should be made from the old high bank of 1884, while appellee's contention is that the extension should be made from the place where the river existed when Rector's survey was made. If appellants' contention be adopted it would locate the north-east line of appellee four hundred and six feet south-west of where it would be located if his contention were adopted.

The following quotation from the answer of appellants to the petition will serve to make clear the real point of controversy between the parties: "And these respondents say that the boundaries of so much of said several surveys as lies south-east of said old high bank as surveyed in 1884 are well defined and in nowise in dispute and that the several owners and their tenants occupy and cultivate up to the respective side lines of their several tracts, and there is therefore no occasion to re-establish them, for they have not been either lost or destroyed nor are they in dispute; and as to the new land, to-wit, the accretion which lies north-west of said old high bank, the controversy is not one of bounda-

ries but a dispute as to the proper rule for the division of accretions between co-terminous riparian owners. And respondents are advised that the accretions in question should be divided by dropping across them a perpendicular from the point at which the side line of each lot intersects the old high bank to the main channel of the Mississippi river as it now flows in front of said accretions, and they say that the respondents, Kehr and Pitzman, in 1891 extended the side lines of survey 148 from the old shore across the accretions to the new shore at right angles to the main channel of the river, and have since been in the actual occupancy and possession of the land within the said side lines to the water's edge of the Mississippi river as it now flows. * * * And respondents respectfully submit that if the court should be of opinion that the petitioner, Henry E. Schrader, is entitled to the appointment of a commission of surveyors, as prayed for in his petition, the court should, before appointing them, determine and declare the rule of division according to which the survey of accretion is to be made between the co-terminous owners and instruct and direct said commission accordingly, and the court will, if necessary, hear evidence upon any disputed question of fact; and the respondents pray for such other and further relief as may be meet and proper in the premises."

The court, after hearing the testimony of G. F. Hilgard, a surveyor, and appellant Pitzman, entered an order finding that the lands in controversy, according to the original surveys, extended to and had their western boundary on the Mississippi river; that by reason of the river being the boundary, the side lines of all of said surveys extended to the middle line or thread of the Mississippi river, although they were actually run and surveyed only to its eastern bank. The court further found that after said survey was made the current of the river changed to the east, cutting and washing away the bank that had formerly been the front of all of said surveys, and that the erosion extended easterly

234—14

to the old high bank of 1884, whereby the lines and corners established by the United States government in 1814 were destroyed and lost; that afterwards the current changed again to its present location, westwardly or north-westerly of the bank as it existed in 1814 when the survey was made, and that an accretion was formed between the boundary line of 1814 and the present bank of the river. The court found and ordered that the petitioner (appellee) was entitled to have the lost corners of his lands, which were established on the bank of the river in 1814, re-established, and "the several parties hereto, petitioner and defendants, are entitled to have the side lines of their several lots extended from their termini on the said survey line of 1814 across the accretion in front thereof, at right angles to the main channel of the Mississippi river as it now flows, and are also entitled to have the corners established on the present shore lines by proper monuments."

A commission of surveyors was appointed, and after making the survey they reported to the court the results thereof. Their report states they were unable to find any evidence of the original corners or bearing trees marked by Rector in the survey of 1814, but by use of a certain copy of his field notes and other surveys they located and established what they report to be the meander line or bank of the river which formed the north-western boundary of the land. Their report was accompanied by a plat, and from the report and the plat it appears that they extended the side lines of the surveys, without any change of course, from the old high bank of 1884 to the bank as it existed in 1814, and from the latter place to the bank as it exists now, west, at right angles with the middle thread of the stream, which is in accordance with appellee's contention, while, as before stated, appellants' contention is that the side lines should be extended from the old high bank of 1884 west to the present bank, at right angles with the middle thread of the stream.

Appellants entered their motion, upon the coming in of the report, to set aside and reject the lines extended from the place where the river bank existed in 1814, west, at right angles with the thread of the stream, to its present bank, as recommended by the report of the commissioners, and to adopt in lieu thereof a dotted line shown on the plat, extended from the side line at the old high bank of 1884, west, at right angles with the middle thread, to the river bank. Written reasons filed in support of said motion were, that the act under which the proceeding was had did not apply to the facts found by the decree and stated in the report of the commissioners; that the land made by accretion to the shore of 1884 is not the land on which the survey line of 1814 was run and corners located, and hence said corners cannot be re-established. The court denied the motion to set aside the report and also the motion to adopt the line contended for by appellants, and entered a decree approving and confirming the report of the commissioners and apportioning the costs among the parties according to their respective interests in the lands. From that decree appellants have prosecuted this appeal.

Edward C. Kehr, and L. D. Turner, Jr., for appellants.

James M. Dill, for appellee.

Mr. Justice Farmer delivered the opinion of the court:

This proceeding was begun under section 2 of the act of 1901. A notice was served upon the defendants to the petition, who were owners of lands and who did not join therein, of the day the petition would be presented to the court and application made for the appointment of a commission of surveyors to re-establish the corners and boundaries of the lands of the parties to the petition. The proceeding seems to have been begun and prosecuted upon the theory

that the court could in said proceeding determine the portions of land formed by accretion and reliction of the river, belonging to the respective parties, and establish the corners and boundary lines of said portions so ascertained by the court.   As said in the statement preceding this opinion, there is no dispute between the parties that the co-terminous riparian owners owned the lands formed by accretion and reliction, but what portion of said land is owned by each of them depends upon whether the side lines are extended from the old high bank of 1884 or from the bank as it existed in 1814.   All parties are agreed that from whichever point the extension of the side lines is made, it is to be made to the present river bank, at right angles with the middle thread. On this point see *City of Peoria* v. *Central Nat. Bank,* 224 Ill. 43.   The commissioners reported to the court that they adopted the line of the Rector survey of 1814, which was the bank of the river as it then existed, as the point from which to extend the side lines, and established the side lines accordingly, and they reported the number of acres this gave to the parties in the land that had been formed by accretion between the river as it existed in 1814 and its present location.   The accretion between the old high bank of 1884 and the river as it existed in 1814 was embraced within a straight extension of the side lines of the government surveys from the old high bank of 1884 to the river as it existed in 1814.   These lines, as we have said, ran in a north-westerly direction, and the extension made by the commission from the place where the river was located in 1814 to the present location of the river was practically east and west.   The effect of the report and its approval by the court appears to us to have been a determination of the title to the land in dispute, and it would seem the court and the parties so regarded it, for appellants moved the court to set aside and reject the lines of extension adopted by the commissioners and to adopt the line contended for by appellants.   The entire argument of both parties in this court

is devoted to a discussion of the question whether the erosion by the river between 1814 and 1884 and the submergence of the land to the old high bank of 1884 destroyed the land, and the accretions made by the river in changing to its present location are all to be distributed between the riparian owners as accretions from the old high bank of 1884 to the river as it now exists, or whether only the land between its boundary as surveyed along the river in 1814 and the present location of the river is to be considered as accretion. We do not think this question a proper one for determination in this proceeding. All that the commission of surveyors could properly do was to locate corners and boundaries that had been lost. They had the authority to locate the boundaries and corners of the lands of the parties to the petition as run and established by the Rector survey of 1814, but they had no authority to determine the ownership of the lands made by accretion or where the extension of the side lines of the surveys should begin in distributing between the parties the land thus formed. After the lost corners and boundaries had been located then the rights of the parties in the lands in controversy must be determined in a proceeding at law for that purpose.

*Krause* v. *Nolte*, 217 Ill. 298, appears to us conclusive of this question. That case was an action of ejectment, and the trial court admitted in evidence, on behalf of the plaintiff, a decree rendered in a proceeding under the act of 1901 for the establishment of lost corners and boundaries. The defendant was a party to that proceeding, and it was contended that because he filed no exceptions to the report of the surveyors the decree was binding and conclusive upon him. This court said (p. 304) : "The act of May 10, 1901, is the same as the act of March 25, 1869, upon the same subject. (Gross Stat. of Ill. of 1871, pp. 726, 727.) In construing the latter act this court said in *Martz* v. *Williams,* 67 Ill. 306, that 'it nowhere confers power on the commissioners to establish new corners or run new bound-

ary lines, but simply to re-establish those once established by the United States.' (*Allmon* v. *Stevens,* 68 Ill. 89.) In *Irvin* v. *Rotramel,* 68 Ill. 11, in speaking of this same act of March, 1869, it is said: 'It is evident from this section, and, indeed, from the whole tenor of the act, its object is to provide means by which lost corners may be restored and placed where they properly belong according to the original survey.' What was said in the cases thus referred to in regard to the act of March, 1869, applies to the act of May 10, 1901. The object of the latter act is merely to restore and re-establish the corners and boundary lines once established by the United States. This being so, the proceeding is not one for the purpose of establishing the title of the parties to any portion or portions of the property as to which a boundary line is to be restored. Establishing title is an entirely different matter from re-establishing and restoring lost corners or disputed boundaries. The decree in the proceeding under the act of May 10, 1901, cannot be set up as an estoppel against appellant or as *res judicata* upon the question of title." A number of authorities of other States will be found cited in the opinion which support the decision reached in that case.

While this question is raised by the assignment of errors it has not been discussed by counsel in their briefs, except that a bare reference is made to it in the reply brief of appellants, and if this were a case where we could with propriety disregard errors assigned and not argued and pass only upon errors discussed in the briefs we would very willingly do so, but under our view of the law and as it has been heretofore decided by this court we feel compelled to reverse this decree and remand the case to the circuit court, with directions to refer back to the commission of surveyors their report, with instructions to modify and amend it in accordance with the views we have expressed.

*Reversed and remanded, with directions.*