# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

## SOUTHERN GRAND DIVISION.

### JUNE TERM, 1873.

GEORGE W. IRVIN

*v.*

DAVID ROTRAMEL.

1. SURVEYS—*duty of commission of surveyors.* The object and purpose of the act of March 25, 1869, entitled "An act to provide for the permanent survey of lands," not being to establish new lines and corners, but to ascertain the old ones, it is the duty of the surveyors appointed under that act to ascertain the lines and corners in dispute as near as possible according to the government survey as actually made, without regard to any mistake they think was made in the original survey. Some known government corner should be ascertained, and the monuments, courses and distances regarded.

2. The commissioners should not start from a disputed corner in establishing the line between the east and west half of a quarter section which is also in dispute. They should first establish the exterior lines and corners of the section according to the government surveys and field notes, and this can only be done by referring to original government corners or

other monuments which have been in existence over twenty years, and recognized as original government corners by the adjoining proprietors. From the lines and corners of the section, by dividing the distance according to the government field notes, the interior corners and lines can be readily established.

3. SAME—*parties.* Where, in establishing a disputed line in a quarter section, other parties than the petitioner and defendant are interested, it is recommended that such persons be made parties to the proceeding.

APPEAL from the Circuit Court of Washington county; the Hon. SILAS L. BRYAN, Judge, presiding.

Mr. CHARLES H. PATTON, for the appellant.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was a petition to the circuit court of Jefferson county, at the March term, 1871, by David Rotramel against George W. Irvin, under the act of March 25, 1869, entitled "An act to provide for the permanent survey of lands," praying for the appointment of a commission of surveyors to make survey of, and to permanently establish the corners and boundaries between the east half and the west half of the southwest quarter of section twenty-one (21), in township four (4) south, in range four (4) east of the third principal meridian, in Jefferson county, and of which they claimed to be, respectively, the owners.

A commission was appointed by the court, who, in due time, to the next August term, made a report, which, on exceptions being filed thereto, was set aside. Whereupon, the court appointed another commission, who filed their report on the 21st of February, 1872.

Before any action was had on this report, the venue was changed to the county of Washington, in another circuit.

At the September term, 1872, of the Washington circuit court, the report of the commissioners, after exceptions taken thereto had been disposed of, was approved by the court and

ordered to be spread at large upon the record, and that each party pay one-half the costs.

Exceptions were taken to this order, and the cause brought here by appeal, where various errors are assigned.

Appellant has submitted an elaborate brief and argument in support of the errors assigned, to which no reply has been made by the appellee.

We have given the case all the necessary consideration, as we think, and have come to the conclusion that the order of the circuit court approving the report of the commissioners must be reversed, for reasons we will briefly give.

We had occasion, in the case of *Martz et al.* v. *Williams et al.* 67 Ill. 306, to give our views at some length on the object and purpose of this act, and to express the opinion it was not the province of the commission to make new corners and new lines as boundaries, but to establish old corners and retrace old lines—those corners and lines once established by the United States surveys, by which parties purchasing land of the government were influenced and governed. We held it was incumbent on the commissioners, acting under this statute, to ascertain the lines and corners, as near as possible, according to the government survey as actually made, without regard to any mistake the surveyors may think there may have been in the original survey as it was actually made. It was there held some well known government corner should be ascertained, and the monuments, courses and distances regarded.

The report in question does not appear to be based on those principles. It is as follows: "Beginning at a stone on section line at quarter-quarter section corner equidistant between the southwest corner of said section twenty-one (21) and the quarter section corner on south side of same section where the west half and the east half of the southwest quarter of said section twenty-one (21) corner on section line; thence north at a variation of 5° 37½′ 161 poles and 2½ links to stone at equidistance between quarter section corners on west side of

said section twenty-one (21) and the center of said section. Notes—The dotted lines on plat show lines of preliminary survey. The corners designated by stones are generally sand stones of moderate size. Original corners identified as shown on plat. Distances as shown on plat are the distances as made by actual measurement, and we certify that, upon proper inquiry made by us, we could not find any witness or witnesses by whom we could prove or identify the original government corners for the southwest corners of sections twenty and twenty-one, or any other legal established corners existing for the period of twenty years at said localities, or government line or tree, or other noted object."

To determine the correctness of this report, and of the survey as made by the commissioners, reference must be had to section three of the act cited. It is as follows: "Upon the filing of proper petition and proof of due notice as aforesaid, the said court shall appoint a commission of three surveyors, entirely disinterested, to make said survey, who shall proceed to make said survey and report their proceedings to that or the next term of said court, accompanied by a plat and notes of said survey ; said commission of surveyors shall be authorized to administer an oath and take the evidence, and incorporate the same with their survey, of any person who may be able to indentify any original government or other legally established corner or witness thereto, or government line tree or other noted object, and all stone corners or other monuments that have been in existence over twenty years, and recognized as original government corners by the adjoining proprietors." Sess. Laws 1869, pp. 241, 242.

It is evident from this section, and indeed from the whole tenor of the act, its object is to provide means by which lost corners may be restored and placed where they properly belong, according to the original survey.

Did the commissioners do this in the case before us? From the report and plat, we are unable to satisfy ourselves they did. The dividing line between the east half and west half

of the southwest quarter of section twenty-one was the line in dispute. It was the duty of the commission to establish it according to this act. In order so to do, they start from the disputed corner on the south side of the quarter section line, and run one-half mile north, and say they have established that line. We are unable to see that this is a compliance with the law.

It seems to us, before the commissioners could have correctly established this line, it was necessary first to establish the exterior lines and corners of the section according to the government survey and field notes, a copy of which every surveyor has or should have, and this can only be done, as the act declares, by referring to original government corners, or to stone corners or other monuments which have been in existence over twenty years, and recognized as original government corners by the adjoining proprietors. This the commissioners did not do, although it appears, by the plat returned by them, they could have done so without much trouble.

The plat shows that the original southeast corner of section twenty-one and the southwest corner of section twenty were identified as original corners. By running a straight line between these two corners east and west, and dividing the distance according to the government field notes, they could not fail to establish correctly the corners on the south side of section twenty-one. By the same process, a line between the northeast corner of section twenty-three and the northwest corner of section twenty would have established correctly the corners on the north side of section twenty-one. Having thus established the north and south corners, the commissioners could readily have established the interior lines according to the rule above stated.

The theory that the east and west lines are crooked, and the north and south lines straight, is not strictly correct. A glance at the plat of the original survey will show the contrary, as well as the testimony of the several surveyors. Their testimony, in substance, is, that the township lines are straight

lines.   Admitting this to be so, we find that the line from the township line north to the southwest corner of section twenty-one, the southeast corner of section twenty-one and the southwest corner of section twenty is. in each instance, one hundred and sixty chains, or two miles; it follows, therefore, that the south line of section twenty-one must be parallel with the township line, and so with all the other lines running east and west through the township for the five miles, running from east to west, starting from the east side of the township. Should an incorrectness appear in this, it would be properly chargeable to incorrectness of measurement, to be attributed to want of skill or to inequalities in the surface, and unless the east and west lines are otherwise controlled by government corners, they ought to be parallel with the southern boundary line of the township in all cases.   That the north and south lines through a township deflect more or less from a direct line, can be readily seen by referring to the government surveys and field notes.   An instance is ready: Suppose section thirty measures eighty chains on the south side and eighty-one chains on the north side, it can not be that the west line of the section would be parallel with the east line thereof, and so it is, more or less, with all north and south lines through a township.

It seems somewhat strange that the commissioners should have made the starting point of their survey at the very line in dispute, when the southeast corner of section twenty-one is fully identified, as also the northwest corner of section twenty, at each of which places there is an original corner, and so there is such a corner at the southwest corner of section twenty.

By the survey, as made, this dividing line is placed five rods further east than it should be, according to the government survey, and which would be shown by running from an established corner.   The weight of the testimony is clearly against this report, and it should not be approved.

It appears there are several other proprietors interested in this line. As the judgment will be reversed and the cause remanded, it would be advisable to amend the petition and make them parties, so as to avoid further litigation by a final adjudication upon the rights of all interested parties.

The judgment is reversed and the cause remanded, with leave to amend petition by making additional parties, if desired.

*Judgment reversed.*