HENRY KRAUSE

*v.*

CHARLES F. NOLTE.

*Opinion filed October 24, 1905.*

1. EJECTMENT—*a plaintiff must recover on the strength of his own title.* A plaintiff in ejectment must recover on the strength of his own title and not upon the weakness of that of his adversary, and if he claims title in fee he must show a fee simple title as distinguished from an equitable one.

2. SAME—*when a plaintiff must deraign title from the government.* A plaintiff in ejectment must deraign title from the government where there is no proof of a common source of title nor of possession by the plaintiff of the strip of land in controversy in himself nor in any prior grantor with whom he connects himself.

3. SAME—*proceeding under Boundary Line act of 1901 is not res judicata as to title.* A decree in a proceeding under the act of 1901 (Laws of 1901, p. 307,) for the permanent survey of lands is not *res judicata* upon the question of title, its only effect being to estop parties to the proceeding from claiming that the boundaries located by the decree are not the same as those originally established by the government surveyors.

4. SAME—*when defense under Statute of Limitations is established.* Proof by the defendant in ejectment of possession of the strip in controversy by himself and his grantors for more than twenty years under *bona fide* claim of ownership establishes a defense to the action, notwithstanding the line to which he held such possession may not have been the true boundary line as located by the government

APPEAL from the Circuit Court of Calhoun county; the Hon. THOMAS MEHAN, Judge, presiding.

This is an action of ejectment, commenced by the appellee against the appellant in the circuit court of Calhoun county on September 27, 1904, to recover a certain strip of land, described in the declaration as "a strip of land off the east side of the north-east quarter of the south-west quarter about fifteen feet wide at the south end, and about ten feet wide at the north end of said strip of land, in section 11, in township 13, south, range 2 west of the fourth principal meridian," etc. Plaintiff alleges in his declaration that, on October 15, 1902, he was in possession of said strip of land. The plea of not guilty was filed. Jury was waived by agreement, and the cause was tried before the court without a jury. The finding of the court was in favor of appellee, plaintiff below, and against appellant, defendant below, and that appellee was the owner in fee of the strip of land described in the declaration, and entitled to the possession thereof. Motion to set aside the finding and for a new trial was overruled, and judgment was rendered on the finding. The present appeal is prosecuted from such judgment.

Appellee, Nolte, is the owner of the east half of the south-west quarter of said section 11, containing eighty acres. Appellant Krause is the owner of the north half of the south-east quarter of said section 11. Appellee, Nolte, is also the owner of twenty acres in the north-west corner of the south half of the south-east quarter of section 11. The farm of appellant, consisting of eighty acres, lies east of the eighty-acre tract, owned by appellee, and north of the twenty-acre tract owned by appellee. It is claimed by the appellant that he owns up to the west line of the strip, described in the declaration, and that the whole of the strip is owned by himself, while the appellee claims that the true boundary line between his farm and that of appellant is the

east line of said strip, in which case the strip would be a part of the land of appellee.

CHARLES J. MACAULEY, (THOMAS F. FERNS, of counsel,) for appellant.

T. J. SELBY, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The proof shows conclusively that the appellee, plaintiff below, was never in possession of the strip of land in controversy between himself and the appellant. Not only was the appellee never in possession of the strip, but he did not show himself to be the owner of the government title to the strip in question. The first deed, introduced by appellee, was a warranty deed by Alanson Fuller and wife, dated September 27, 1858, to one Frederick Battles. Appellee then showed title from Battles to himself, but he did not prove title from the government to Fuller. As appellee did not show that he was ever in possession of the strip, and did not connect himself with any prior grantor who was in possession of it, it was incumbent upon him to deraign title from the government to himself. "Ordinarily the plaintiff's title is shown by proof of direct grant from the government, or by a connected chain of title back to the government or to some grantor in possession." (10 Am. & Eng. Ency. of Law,—2d ed.—p. 484; *Brandenburg* v. *Seigfried,* 75 Ind. 569; *Jackson Lumber Co.* v. *McCreary,* 34 So. Rep. 851; *Esker* v. *Heffernan,* 159 Ill. 38). Nor did the appellee prove that there was any common source of title, under which he and appellant claimed. In an action of ejectment the plaintiff is bound to recover on the strength of his own title, and not on the weakness of that of his adversary. Claiming title in fee simple he must show in himself a fee simple title at law, as distinguished from an equitable title. (*Whitford*

v. *Drexel,* 118 Ill. 600; *Barrett* v. *Hinckley,* 124 id. 32; *Esker* v. *Heffernan, supra).*

The proof in the case was clear and conclusive that the grantor of the appellant, August Krause, appellant's father, purchased the north half of the south-east quarter of said section 11 in 1856 from one Kinder, and received a deed therefor from Kinder in 1864. August Krause sold and deeded the north half of the south-east quarter to the appellant, his son, on January 4, 1898. The proof shows that August Krause and the appellant were in possession of the strip in question for more than twenty years prior to the beginning of this suit. August Krause had a fence upon the west side of the strip and on the western boundary line thereof from 1856 down to 1898, and the strip remained enclosed with appellant's land by a fence on the west line thereof from 1898 down to the time of the beginning of this suit. In other words, the appellant clearly established a defense to the action of appellee upon the ground of possession under the twenty years statute of limitation.

Appellee claims, however, that he is entitled to recover by reason of a decree, rendered by the circuit court of Calhoun county at the April term, 1904, in a proceeding, instituted by the appellee under "An act to provide for the permanent survey of lands," approved May 10, 1901. (4 Starr & Curt. Ann. Stat. p. 1240). The trial court permitted the appellee to introduce in evidence the proceedings, instituted under the act in question for the purpose of establishing the boundary line between the lands in question.

At the October term, 1903, appellee filed a petition in the circuit court, setting up that he was the owner of the east half of said south-west quarter, and also the twenty acres above described; that appellant was the owner of the north half of said south-east quarter, and that one Charles Weineke was the owner in fee of the remainder of the eighty-acre tract, of which the twenty acres, owned by appellee, was a part; that the corners and boundaries of said adjacent tracts

of land were in dispute, and that he was desirous of having said corners and boundary lines permanently re-established; that he applied to Krause and Weineke to enter into a written agreement for a survey to permanently establish said line and corners between them and him of said adjacent lands, and to abide by said survey to be made by a competent surveyor, but that Krause and Weineke refused to enter into such an agreement; and the petition then prayed the court to appoint a commission of three surveyors, entirely disinterested, and asked that said commission be required to make said survey and report their proceedings, etc. On October 16, 1903, the court made an order, finding that Weineke and Krause had refused to make the agreement referred to in the petition, and that appellee had given the notice required to be given by said act of the application to the court for the appointment of a commission of surveyors to make survey of, and to permanently establish, said corners and boundaries; and in said order the court appointed John A. Earley of Calhoun county, Thornton G. Capps of Green county, and Walter C. Hansell of Jersey county, three surveyors, to act as said commission for the purpose of surveying and permanently establishing the true corner of said section 11, and the true boundary line running south from the center of said section, and the true corner at said last mentioned point at the south terminus of said boundary line between the land owners, Nolte, Weineke and Krause. The order directed that the commission should proceed to make a survey and report their proceedings, accompanying their report by a plat and notes of said survey, and that the commission might administer an oath and take evidence and incorporate the same with their survey, etc. Two of the surveyors made a report, to-wit, Earley and Capps, but Hansell did not make the survey, nor join in the report, the survey having been made in his absence, as he was engaged in a survey elsewhere. The report was accompanied by a plat, as directed. The report found, in substance, that the eastern

boundary line of the strip in question was the true boundary line between the farms.

On April 13, 1904, the court entered a decree, reciting that the cause came on to be heard on the report of the commission of surveyors, except Hansell, theretofore appointed by the court to survey and establish the corners and boundary lines above mentioned, and in said decree it was recited that the court had examined the report, and that no objections had been filed to the approval of the same, and that no exceptions had been taken thereto, and it was thereupon ordered and decreed that the report be approved and confirmed, and that the corners and boundary lines established in said survey and report, should, unless appealed from in thirty days, be held as permanently and unalterably established according to the survey; and it was therein ordered that the costs of the proceeding be divided equally among the parties thereto.

The appellant never entered his appearance in the proceeding for the purpose of having the boundary line between the farm of himself and appellee located, and default was entered against him.

It was contended by the appellee, upon the trial in the court below, that, as appellant filed no exceptions to the report of survey as made by the two surveyors, the decree of the court, approving that survey and report, was binding and conclusive upon appellant, and that appellant is estopped from claiming or asserting title to the land in controversy in this suit. In other words, the principal question, presented by the record in this case, is whether the question of title to the strip of land in controversy was passed upon and determined by the circuit court in its decree rendered at the April term, 1904, approving a surveyors' report, made by two of the commission of three surveyors, appointed by said court at the October term, 1903, thereof to make a survey and locate the boundary line between the farms of appellant and appellee.

We are of opinion that the court erred in holding, that the decree, rendered in the proceeding for the establishment of the boundary line, was conclusive upon the appellant upon the question of title to the strip.

The act of May 10, 1901, is the same as the act of March 25, 1869, upon the same subject. (Gross' Stat. of Ill. 1871, pp. 726, 727). In construing the latter act, this court said in *Martz* v. *Williams,* 67 Ill. 306, that "it nowhere confers power on the commissioners to establish new corners or run new boundary lines, but simply to re-establish those once established by the United States." (*Allmon* v. *Stevens,* 68 Ill. 89.) In *Irvin* v. *Rotramel,* 68 Ill. 11, in speaking of this same act of March, 1869, it is said: "It is evident from this section, and indeed from the whole tenor of the act, its object is to provide means by which lost corners may be restored and placed where they properly belong according to the original survey." What was said in the cases thus referred to in regard to the act of March, 1869, applies to the act of May 10, 1901. The object of the latter act is merely to restore and re-establish the corners and boundary lines, once established by the United States. This being so, the proceeding is not one for the purpose of establishing the title of the parties to any portion or portions of the property, as to which a boundary line is to be restored. Establishing title is an entirely different matter from re-establishing and restoring lost corners or disputed boundaries. The decree in the proceeding under the act of May 10, 1901, cannot be set up as an estoppel against appellant, or as *res judicata* upon the question of title. "For obvious reasons, a judgment cannot be conclusive as to a matter, which was not in issue in the former action, and which could not properly have been litigated therein." (24 Am. & Eng. Ency. of Law, —2d ed.—pp. 775, 776). In *Smith* v. *Rountree,* 185 Ill. 219, we said (p. 223): "A judgment in a former proceeding is an estoppel only where it appears from the face of the record, or by extrinsic evidence, that the precise matter in

controversy in the suit at bar was raised and determined in the proceeding which is urged as an estoppel. (*Sawyer* v. *Nelson,* 160 Ill. 629). A judgment in a former proceeding between the same parties only bars subsequent action on matters actually settled by it. * * * The estoppel of a judgment extends only to the questions involved in the issue, and not to any incidental matter, though it may have arisen and been passed upon."

The decree, rendered by the court in the application made to the court under the act of 1901, could not have the effect of an estoppel in the present action of ejectment, unless the title to the strip here in controversy was directly in issue and determined there. That it was not in issue, and was not determined, appears from the recital of those proceedings as above made. Upon the principle, that the estoppel only extends to the question directly involved in the issue, and not to incidental or collateral matters which may have arisen, the court had no jurisdiction to try the title to the strip in controversy in the proceeding to establish the corners and boundary, nor was such title tried as the decree indicates.

In *King* v. *Brigham,* 23 Ore. 275, where the same contention was made as is made here, that, by a decree in a former suit locating and establishing the boundary lines between the farms of the two contestants, the question of title to the land between the lines claimed by the parties to that proceeding was determined, and that the plaintiff in an action brought to quiet title to the strip of land between said lines so claimed was by said decree estopped to assert or claim title to said strip, it was said: "The controversy was as to the true location of the line, and not the title to the strip of land lying between the different lines alleged by the parties, and consequently the title to it, not being in issue, was not adjudicated, and cannot operate as an estoppel or bar to the present suit." In the same case it was said by the court in reference to the proceeding to establish the boundary: "The object of the suit, therefore, is to ascertain the

true boundary line between the contiguous estates, and not to try the question of title on either side of the boundary. It follows, then, that the statute does not undertake to transfer to the jurisdiction of equity cases of disputed boundary, which involve questions of title, and belong to the common law jurisdiction. A statute of that kind would be clearly subject to the objection of violating the constitutional right of the defendant to a trial by jury; but the statute does give jurisdiction to try cases of disputed boundary between the owners of adjoining lands arising from other causes than an equity superinduced by the act of the parties." In *Russell* v. *Senior,* 118 Ind. 520, it was said that "a land owner who submits to a survey does not by so doing lose any of his land. In submitting to a survey he does not surrender any valid title that he may have, no matter how it may have been acquired. In not objecting to a survey he does not put himself in the position of surrendering his land, or any part of it." (See also *Cleveland* v. *Obenchain,* 107 Ind. 591). In *Riggs* v. *Riley,* 113 Ind. 208, it was held that "a survey establishing a line between adjoining land owners will not defeat a title previously perfected by adverse possession for more than twenty years, nor revive the right of the original owner. * * * All that a survey does is to establish the line, and it does not determine the title to the real estate." (*Russell* v. *Senior, supra*). So, in the case at bar, the appellant established in the court below a title previously perfected by adverse possession for more than twenty years. Consequently, the survey, made by the commission of two surveyors in the former proceeding, could not have the effect of defeating such title.

In *Love* v. *Morrill,* 19 Ore. 548, it was said: "A court of equity will not try title to land in a suit to establish boundaries. This question being purely legal was one for the courts of law, assisted as they are in respect to the findings of fact by a jury." In *West Hartford Eccl. Society* v. *First Baptist Church,* 35 Conn. 119, the Supreme Court of Con-

necticut, speaking of a proceeding to fix a boundary line between two adjoining proprietors, said: "The object is not to try the question of title on either side of the line, but to mark the place of the old line, where the ancient monuments are gone."

In *Washington Co.* v. *Matteson,* 11 R. I. 554, it was said: "Law and equity do not undertake to do the same things. For instance, in an action of ejectment the ostensible object is not to define the boundaries of the close, but to recover possession; in doing this it may become necessary incidentally to determine the boundaries, but it is not the purpose of the suit; in equity the object of the bill is to ascertain and fix the boundaries, without reference to the possession, and without affecting any legal rights that either of the parties may have acquired. * * * We think, however, that the court lost sight of the real purpose of such acts, which is simply to restore lost bounds. * * * It may be asked, of what avail is it to do this if no conclusion follows as to title or possession? but this is a question with which we have nothing to do, as it affects the wisdom of the law." In *Mosman* v. *Sanford,* 52 Conn. 23, in construing a law in substance the same as the act of May 10, 1901, it was said: "It is very clear that the statute did not intend to conclude the parties to a proceeding under it upon a question of title. * * * Its whole object is the restoration of lost boundaries."

The appellant established his defense under the Statute of Limitations by showing possession of the strip in question by himself and his grantors for more than twenty years. In other words, appellant occupied and claimed to own the land up to the western boundary line of the strip in question, believing such western boundary line to be the true line between his farm and that of appellee and the latter's grantors, and although such line may not be the true one, yet having owned and claimed the land up to it for more than twenty years, he has acquired title to such strip by adverse posses-

sion. In *Grim* v. *Murphy*, 110 Ill. 271, where an adjoining
proprietor took possession of and improved the land up to a
fence, believing it to be within the line and claiming to the
fence, this court said: "If he believed the fence was within
the boundary of the true line, and took possession, improved
and occupied it under that belief, then the possession would
be adverse." In *Mosman* v. *Sanford, supra,* it was also said:
"If an adjoining owner has by an encroaching adverse pos-
session gained title to a strip of his neighbor's land, that title
is just as good after the legal restoration of the lost bounds
as before."

The effect of the decree entered in the proceeding under
the act of 1901 is simply, that the lines and corners, located
by the commission of surveyors, must be considered and
taken as the government corners and lines; and any party
to a suit, begun for the purpose of having the question of
title to the lands on either side of those lines determined, will
be estopped from asserting or claiming that the corners or
lines, so located by the commission of surveyors, were not in
the same place as were the lines and corners located and
established by the government surveyors. This is the con-
struction that has been put upon similar statutes by the
courts of other States.

The appellant makes other points against the validity of
the decree admitted in evidence, to-wit, that the court had
no authority to approve a report made by two surveyors
when three were appointed; and that the surveyors in their
report failed to locate and establish the exterior corners and
lines of section 11 before locating the interior corners and
lines, as was held to be necessary in *Irvin* v. *Rotramel, supra.*
It is, however, unnecessary to discuss or pass an opinion
upon these other points, thus urged by counsel.

Being of the opinion, that the court erred in holding that
the decree in the proceeding, instituted by appellee under the
act of 1901, was conclusive upon the appellant as to the ques-
tion of title, we hold that the judgment of the circuit court

in favor of the plaintiff, as the owner of the fee simple title, and giving him the right of recovery as such owner, requires a reversal.

Accordingly, the judgment of the circuit court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*