SUSAN L. PLISKE, Plaintiff-Appellee, v. ALEX YUSKIS et al., Defendants-Appellants.

Third District   No. 79-480

Opinion filed April 9, 1980.

90

Leon L. Lamet, of Warsaw, for appellants.

George J. Lewis, of Lewis, Blickhan & Longlett, of Quincy, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal by the defendant, Alex Yuskis, from a judgment of the circuit court of Hancock County which enjoined the defendant from entering upon lands of the plaintiffs, Susan L. Pliske.

This appeal stems from a boundary line dispute between the parties. The plaintiff filed a complaint in 1977 in which she alleged that she was the owner of:

> "The Southwest Quarter of Section Twenty-nine (29), Township Three (3) North, Range Nine (9) West of the Fourth Principal Meridian, situated in Hancock County, Illinois."

The complaint further alleged that the above-described real estate adjoins real estate being a quarter section in Section 29, lying to the east and which is owned by the defendant. In short, the dispute concerned the correct location of the center line running north and south between the southwest quarter and the southeast quarter of Section 29.

Several issues are raised, however, we first direct our attention to the trial court's determination of the location of the center line.

Both the plaintiff and the defendant employed surveyors who prepared plats which were introduced into evidence in support of their claim as to the correct location of the disputed center line.

Surveyor Harmon testified that plaintiff's exhibit No. 7 set forth the correct location of the center line and prorated or divided equally the southern quarter sections of Section 29. As the result of such proration the north line of each quarter section measured 2,660.66 feet, and the southern line of each measured 2,648.47 feet. It is readily apparent from exhibit No. 7 that the quarter sections are not true squares; however, it was Harmon's testimony that such is not unusual.

Surveyor Greene testified that defendant's exhibit E set forth the correct location of the center line, exhibit E being a plat which established the length of the north line of the southwest quarter to be 2,632.94 feet and the north line of the southeast quarter having a length of 2,654.05 feet. According to the plat prepared by Greene the southeast quarter of Section 29 is 21.11 feet wider than the southwest quarter of Section 29. The record discloses that in the preparation of defendant's exhibit E surveyor Greene relied upon defendant's exhibit D, which is a plat of a roadway prepared by county surveyor J. H. Horney in 1926. The roadway ran east and west on both sides of the half section line of Section 29 and shows the location of a stone which purports to be on the dividing line between the southwest quarter and the southeast quarter of the section. The roadway plat (defendant's exhibit D) establishes that the southeast quarter, being the land ultimately owned by the defendant, is wider than the southwest quarter, the land ultimately owned by the plaintiff.

In order to determine which plat, to-wit, plaintiff's exhibit No. 7 or defendant's exhibit E, correctly establishes the location of the center line which separates the quarter sections, it is necessary that an examination be made as to the research conducted and procedure followed by the surveyors employed by the parties.

Surveyor Harmon's testimony was that he first became involved in a study of the boundary line dispute between the parties to this suit in the year 1974. He had been on the property in question and twice had searched the land records in the Hancock County courthouse. As the result of his directions to subordinates he obtained a certified copy of the original government survey plat of Section 29 (plaintiff's exhibit No. 2) from the National Archives Record Service. This original plat showed that it had been made in the year 1862. This document discloses that when the original survey was made the quarter sections in question were divided equally. It was the testimony of Harmon that if quarter sections

were not equal there would be a notation to that effect on the quarter sections set forth on the plat. Such a notation did appear in some of the areas set forth on the plat but not in regard to the quarter section in question.

Harmon's research resulted in the finding of the surveyor's record concerning the original survey of Section 29 which was admitted into evidence as plaintiff's exhibit No. 3. This exhibit shows that as to the quarter sections in question that the south lines of the quarter sections are as to length the same as are the north lines. The witness called attention to the fact that the distances involved as to the north and south lines are not the same as the distances set forth in the plat of the original government survey. This discrepancy was explained by calling attention to the fact that different surveyors were engaged in the surveys and that different instruments of measuring were used, and even though the surveyors used chains different distances would frequently result because the links would expand as the result of wearing and long usage. In further explanation as to the discrepancy of distance shown on exhibit No. 2 and exhibit No. 3, the witness Harmon testified "* * * if two people measure and they have their instruments of measure, their chains are not the same. If they prorate the difference they should come out to the same points even though it says different lengths."

Exhibits Nos. 4 and 5 were admitted into evidence and they, like exhibit No. 3, consisted of surveyor records, said surveys having been made for the years 1862, 1865, 1869 and 1879. The surveyor's record could better be described as surveyor's notes setting forth identifying objects used in making a survey, i.e., trees (in the instant case such as Box Elder, Ash, Pecan, Willow, Redbud, Mulberry and Maple), stones, posts, stakes, stumps, pond, and a river. It was the testimony of Harmon that he considered and utilized all the information he could from these notes in his efforts to determine the exact center line separating the southwest quarter and the southeast quarter of Section 29.

It was testified to by the witness that he discovered another plat of the quarter sections which was dated November 14 and 15, 1917, and which had been made by Mr. Horney, county surveyor, for Charles Walker for the purpose of fixing the boundary lines of the quarter section (defendant's exhibit No. 6). This plat also showed an equal proration or division of the area involved in the quarter sections.

It was Harmon's testimony that based upon his research and the information contained in the various exhibits he was able to discover corner stones, even though this necessitated the excavating of a blacktop road with a back hoe. Among the stones located were one at the west quarter corner of Section 29 and one at the east quarter corner of Section 28. The distance between the two stones was two miles. Using an

electronic measuring device, guaranteed to be accurate to within three hundredths of a foot, the center or dividing line between the southwest quarter and the southeast quarter of Section 29, Township 3 North, Range 9 West of the Fourth Principal Meridian, Hancock County, Illinois, was located as set forth in plaintiff's exhibit No. 7 which we have previously set forth in detail.

Harmon's testimony was to the effect that while he prepared three maps or plats, the last being exhibit No. 7, that as the result of his research of the original government survey, subsequent government surveys and Horney's 1917 survey, he was convinced that the distances involved in the southwest quarter and the southeast quarter of Section 29 were equal and that he never deviated or varied from the theory of proration.

We have previously set forth a sufficiently detailed description of defendant's exhibit E which establishes that the north and south line between the southwest quarter and the southeast quarter does not divide the land equally but shows that the southeast quarter is the larger of the two. In preparing this exhibit surveyor Greene testified that he relied on surveyor Horney's road plat of 1926, being exhibit D, which also indicated an unequal proration of the land involved in the quarter sections.

Exhibit D shows a stone located in the center of Section 29; however, Greene testified, as did Harmon, that the stone was never found.

The cross-examination of Greene is pertinent in that it indicates his approach to the problem of establishing the boundary line. Greene testified that he did not make a search of the courthouse records; that he was unaware of the 1917 Horney plat (plaintiff's exhibit No. 6); that he had records from another engineering firm in Galesburg, the name of which he could not specifically recall, and that he had the defendant Yuskis research all the records for him and obtain copies.

It is pertinent to note that in that portion of defendant's exhibit E (a survey plat supporting the defendant's contention as to the location of the contested boundary line) in the written portion explaining the procedure followed in the plat's preparation, that the surveyor Greene makes the following statement: "This procedure is not in compliance with the standard procedure of locating the center of a section."

This court is impressed with the research and application of civil engineering procedures engaged in and followed by surveyor Harmon. Fot that reason and the further reason that we harbor doubts as to the value of defendant's exhibit D since it was concerned with laying out a roadway and not fixing boundaries, we are of the opinion that the trial court was correct in finding that plaintiff's exhibit No. 7 established the location of the division line between the quarter sections owned by plaintiff and defendant. We are, however, mindful of the fact that before

final determination of such a question can be made it must be established that the procedures followed in arriving at the division line set forth in exhibit No. 7 complied with the requisite legal principles.

■■ Directing our attention to the applicable law we recognize that in our State it is well settled that monuments, when found, must control as against courses and distances given on field notes, when determining boundary lines. (*England v. Vandermark* (1893), 147 Ill. 76, 35 N.E. 465; *Sawyer v. Cox* (1872), 63 Ill. 130; *McClintock v. Rogers* (1849), 11 Ill. 279.) In the instant case no monuments or stones were found along, in, or on the quarter section land between the property of the plaintiff and defendant. While such monuments may well have been placed in byegone days, they defied discovery when sought by the parties to this case and by the surveyors they employed.

There is no quarrel between the parties that monuments were found and relied upon by the surveyors for each party. Four monuments, being stones, were located along the half section line running through Sections 28, 29 and 30. These four stones were used by the surveyors in their efforts to establish the correct boundary line.

In the instant case the lines and corners of the quarter sections had become obliterated and no natural or artificial monuments could be found which by their very presence identified the boundary line, so surveyor Harmon resorted to field notes and plats of the original survey in order to locate the disputed division line. Such practice has long been approved of by our supreme court. (See *Sawyer v. Cox* (1872), 63 Ill. 130; *McClintock v. Rogers* (1849), 11 Ill. 279.) The importance of original field notes and plats is recognized by a statutory provision which requires the county board of each county to acquire copies of them, and for the depositing of the same in the recorder's office. See Ill. Rev. Stat. 1977, ch. 133, par. 5.

Mr. Harmon, the surveyor for the plaintiff, relied upon the original government survey plat and subsequent surveys and field notes concerning Sections 28, 29 and 30. Harmon's reliance upon field notes (plaintiff's exhibits Nos. 3, 4 and 5) and the 1917 plat of Horney (plaintiff's exhibit No. 6) convinced him that the quarter sections in question had originally been divided equally and that subsequent surveys continued to do so. A study of the exhibits compels a conclusion that Harmon's conviction was well founded and that he was correct in adhering to the principle of prorating in order to determine the correct boundary line.

By contrast Greene, surveyor for the defendant, failed to follow the requisite standards and procedures but instead relied solely in preparation of exhibit E on defendant's exhibit D, being a road plat on a half section line. It is difficult to conclude that Horney intended to establish section or quarter section lines on the road plat in light of the plat

he prepared approximately nine years earlier, the sole purpose of which was to "fix boundary lines." In this earlier plat he treated the quarter sections as being equal.

■■ No purpose would be served by again setting forth the testimony of Greene and his statement concerning the lack of compliance with standard procedures in preparing exhibit E. It is clear that this latter exhibit is not credible or reliable in establishing the contested property line. We conclude that plaintiff's exhibit No. 7, being made in reliance upon original field notes and government survey plat, is credible and reliable and the trial court committed no error in finding that this exhibit correctly established the location of the division line between the quarter sections owned by plaintiff and defendant.

The defendant also contends that error was committed in that all parties affected by plaintiff's exhibit No. 7 were not made parties to the instant proceedings.

■ In support of this contention the defendant relies upon statutory provisions, to-wit, sections 1, 2, 3 and 4 of "An Act to provide for the permanent survey of lands" (Ill. Rev. Stat. 1977, ch. 133, pars, 11, 12, 13 and 14), and the case of *Irvin v. Rotramel* (1873), 68 Ill. 11. The statutory provisions and cited case all pertain to the reestablishment of lost corners and boundaries by the use of a commission of surveyors. Such statutory procedure was not followed in the instant case, nor was it mandatory that it be followed. The case of *Irvin* cited by the defendant also pertains to commission of surveyors' proceedings and is likewise inapplicable.

The defendant attempts to equate the instant case with subdivision cases where the apportionment rule is applied. Such an attempt is not well taken, since in the instant case the trial court's decision did not establish any boundary line other than that one in dispute between the plaintiff and defendant. The boundary lines of other property owners in Section 29 were not materially affected in any manner by the trial court's decree. An indispensable party is one whose presence is so indispensable to a decision of a case on its merits that a final decree cannot be entered without materially affecting his interests. (See *Hobbs v. Pinnell* (1959), 17 Ill. 2d 535, 162 N.E.2d 361; *National Bank v. S.N.H., Inc.* (1975), 32 Ill. App. 3d 110, 336 N.E.2d 115.) There was no indispensable party omitted in the instant case.

■■ ■ The defendant further asserts that the injunction was not lawfully issued and should be dissolved. The thrust of the defendant's argument is that the plaintiff had an adequate remedy at law in that she could have brought an action to recover damages. There is a general rule that a court of equity will not enjoin a trespass; however, this rule is fraught with exceptions. Equity will enjoin trespass on land where a complainant's title is admitted, and threatened repeated trespasses make

amounts recoverable at law disproportionate to expense. (See *McRaven v. Culley* (1927), 324 Ill. 451, 155 N.E. 282.) The trial court found that the damages recoverable since the first trespass occurred would not be great and that the expense of litigation is not small. The trial court further found that the instant case was not one which would require a great measure of damages on a daily or even a monthly basis. Title was clearly not an issue in the case, and the record discloses that defendant's trespasses had continued since 1974 and that he intended to continue such practice. In the light of the trial court's findings and based upon the evidence in the record, the injunction was lawfully issued. See also *Cragg v. Levinson* (1908), 238 Ill. 69, 87 N.E. 121.

The defendant further contends that there was no proof of an actual trespass. The record belies such contention since the evidence establishes that the defendant commenced farming a portion of the plaintiff's land in 1974 and continued to do so. The evidence further discloses that the defendant removed an iron pipe set by the plaintiff's surveyor in 1974 when the plaintiff attempted to establish the correct boundary line. We will not set forth the testimony of various witnesses; however, it clearly establishes repeated trespass on the part of the defendant.

■■ Lastly, it is defendant's assertion that the judgment order is meaningless and not binding upon him since it contains an error. The complained-of error is a typographical one in that the order stated in its findings that the defendant owned the southwest quarter of Section 29, when it should have been the southeast quarter of said section. The error is unfortunate but not fatal. The pleadings and proof clearly establish that the defendant was the owner of the southeast quarter. This court is empowered to exercise all or any of the powers of amendment of the trial court. (See Ill. Rev. Stat. 1977, ch. 110A, par. 366(a)(1), and 32 Chi.-Kent L. Rev. 180 (1954).) Pursuant to the power granted to this court, we amend the judgment order of the trial court in order to correct the error contained therein, and as corrected it will show that the defendant was the owner of the Southeast Quarter of Section 29, Township Three (3) North, Range Nine (9) West of the Fourth Principal Meridian, situated in Hancock County, Illinois.

For the reasons set forth herein the judgment of the circuit court of Hancock County is affirmed.

Affirmed.

ALLOY, P. J., and STENGEL, J., concur.