HAROLD E. RUNGE *et al.*, Plaintiffs-Appellants, *v.* FRANK DeKEYREL, Defendant-Appellee.

Third District    No. 81-105

Opinion filed November 17, 1981.

Samuel S. McHard, of Katz, McAndrews, Durkee & Telleen, of Rock Island, for appellants.

John G. Ames, of Minteer, Ames & Manecke, of Coal Valley, for appellee.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

Appellants and their predecessors in title have owned and occupied land on one side of an old fence, mostly hedge, for more than 20 years.

Appellee and his predecessors in title have owned and occupied the land on the other side of the fence. The fence had been considered the boundary line between the two parcels of land for at least 50 years.

Appellants commenced an action to have the division fence between the two properties moved between 14 and 25 feet on the basis that the fence did not represent the true and correct boundary between them as shown by a plat of survey conducted by one D. F. Casey.

Casey testified that he used no governmental monuments as starting reference points in making his survey, but established such points through the process known in surveying as "reconstruction."

In 1966 a township survey plat showed a road on the land in question. However, no road was ever actually created.

The uncontroverted testimony of prior owners of appellants' tract, who have no interest in the outcome of the litigation, established that the fence as it exists today existed in the same place from the time a Mr. Tomlinson bought the property until the present, and that these predecessors in title acknowledged that fence to be the boundary and acquiesced in its location.

Appellant himself testified that he did not question the boundary either until some time after he learned of a survey made by Mr. Casey, and he in fact made repairs to the fence both before and after that date and continues to do so.

No evidence was introduced that the line of the fence has ever varied over the past 25 years. On the contrary, the testimony of both sides was that the fence has not been moved or varied in any manner during that time.

From an adverse ruling declaring that defendant had acquired title to the disputed strip of land by adverse possession, plaintiffs have appealed.

In the present case plaintiffs filed a complaint in which they alleged that a certain plat of survey prepared by D. F. Casey showed the true boundary line between their property and the defendant's property, and that the existing fence was not the true boundary between their respective properties. Therefore, the plaintiffs had the burden of proving that the survey line on which they relied was correct. This they failed to do.

The survey which plaintiffs claim establishes the correct boundary between their property and the defendant's property was prepared by D. F. Casey. Plaintiffs attempted to introduce into evidence as exhibits an 1866 road plat and the field notes made in connection with the preparation of that plat. However, Mr. Casey did not state on direct examination if he used those two exhibits in the preparation of his plat, and in fact did not state specifically what method he did use to establish his reference points to run the section line.

In cross-examination, Mr. Casey testified that not only were the

stones from the original government survey no longer in existence, but that he only used the 1866 survey in a general way and not for specific dimensions and did not use the field notes at all. The only point Mr. Casey testified that he could establish was based upon an old fence running north next to the school house which appeared on the 1866 plat. In fact, at the close of his testimony Mr. Casey had failed to state in even a general way how he determined any reference points for establishing his survey lines.

This testimony falls short of the requirements of a recent third district case for establishing a section line by reconstruction. In *Pliske v. Yuskis* (1980), 83 Ill. App. 3d 89, 403 N.E.2d 710, cited also by plaintiffs, the court stated:

"In the instant case the lines and corners of the quarter sections had become obliterated and no natural or artificial monuments could be found which by their very presence identified the boundary line, so surveyor Harmon resorted to field notes and plats of the original survey in order to locate the disputed division line. Such practice has long been approved by our Supreme Court." *Pliske v. Yuskis* (1980), 83 Ill. App. 3d 89, 94, 403 N.E.2d 714.

In the instant case, surveyor Casey testified and did not rely on the field notes of an 1866 road plat, and did not attempt to use the original government survey. In *Pliske v. Yuskis*, the surveyor for the plaintiffs had twice searched the land records of Hancock County, had obtained a certified copy of the original government survey plat from the National Archives Record Service, found and relied upon the field notes from the original survey and had admitted into evidence five previous surveys upon which he relied and which supported his survey plat. The court stated:

"It was the testimony of Harmon that he considered and utilized all the information he could from these notes in his efforts to determine the exact center line separating the southwest quarter and the southeast quarter of Section 29.

* * *

It was Harmon's testimony that based upon his research and the information contained in the various exhibits he was able to discover corner stones, even though this necessitated the excavating of a blacktop road with a back hoe." *(Pliske v. Yuskis* (1980), 83 Ill. App. 3d 89, 92, 403 N.E.2d 714.)

The court then found as follows:

"We conclude that plaintiff's exhibit No. 7, being made in reliance upon original field notes and government survey plat, is credible and reliable and the trial court committed no error in finding that this exhibit correctly established the location of the division line

between the quarter sections owned by plaintiff and defendant." *Pliske v. Yuskis* (1980), 83 Ill. App. 3d 89, 403 N.E.2d 714.

In *Pliske* the surveyor for plaintiffs did a great deal of research to establish his reference points, and the court found that he not only found but relied on all the information he could, including original field notes and government survey plat. In the instant case, Mr. Casey testified to just the opposite, that he did not rely on field notes of the 1866 road plat. Mr. Casey in fact never clearly established how he arrived at his reference points.

What is essential to this appeal is that the trial court apparently did not feel that the accuracy of the survey had been established, although its ruling appears to be based on alternate grounds; thus, plaintiffs have failed to meet their burden of proof on the first essential element of this case. *Rhodes v. Sigler* (1975), 27 Ill. App. 3d 1, 325 N.E.2d 381.

The undisputed facts in this case show that an actual boundary fence exists now and has existed in the same location as now for more than 25 years, and the implication is that it probably existed in this same place for 50 to 75 years.

From the testimony of plaintiffs' two successive predecessors in title, we know that the fence has existed in the same place, since prior to 1955 when the one predecessor in title, Glen Tomlinson, actually built the east half of the fence himself, placing it on the old fence line, and that the two predecessors in title all acknowledged the fence as the boundary between the two subject tracts, treating it and acquiescing in it as the boundary. Also from the testimony we know that the defendant and his predecessors in title treated the fence as the boundary and utilized all the land adjacent to and north of the fence.

The Illinois Supreme Court has enunciated rules pertaining to boundary fence disputes which we believe are controlling in the factual situation involved in this case.

The central issue of this case, is, "must an established, recognized, and maintained boundary line between adjoining landowners be moved if it is discovered or alleged that said boundary line does not conform to the legal descriptions of the properties?"

Two leading Illinois Supreme Court cases have dealt with this issue:
"The adoption of a division line between the owners of adjoining lands may be implied from their acts and declarations and by acquiescence in respect thereto. After the recognition of such division line as the true boundary for the statutory period of limitation the parties and their privies are estopped from asserting that it is not the true line." (*Kandlik v. Hudek* (1936), 365 Ill. 292, 299, 6 N.E.2d 196, 199.)

This rule is also followed in *McLeod v. Lambdin* (1961), 22 Ill. 2d 232, 174 N.E.2d 869.

In each of the two cases, some form of division fence had been erected by adjoining land owners along a line which they believed to be the boundary of their properties, and recognized as such by themselves and their successors in interest. Also, in each case the division fence was erected some distance from the true government survey line. It was not until after these fences had been in existence for 22 years, and recognized as the boundary, that any question arose.

Similarly, in the present case Glen Tomlinson, previous owner of the plaintiffs' tract, erected the division fence in question on a line which he believed to be the boundary between his property and the defendant's tract. In fact, Mr. Tomlinson testified he built the fence along the same line as a hedgerow which had been in existence for an unknown period of years. This fence was built in 1953.

For the next 20 years this fence was recognized as the boundary between the two tracts by defendant and his father, and the successors in interest to Mr. Tomlinson, including the plaintiffs. It was not until about 1974, approximately six years after he had purchased the tract, that plaintiffs questioned the boundary line between the two tracts. Up until this time, and indeed since this time, the defendant has farmed up to the fence in question on the basis that it is the true boundary line between the tracts.

■■ These facts fall in line with the facts in the *McLeod* and *Kandlik* cases, and the case should be controlled by the rule there stated. In citing the *Kandlik* case with approval, the court in *McLeod* said, "if the rule in the *Kandlik case* were not followed practically every boundary line would be suspect and open to litigation." (22 Ill. 2d 232, 237, 174 N.E.2d 869, 872.) Indeed, the same rationale for the holding in *McLeod* could be given to the present case.

> "We believe that the many years during which the respective owners farmed up to the hedgerow and utilized it as a fence to contain their cattle fairly implies their agreement to establish and recognize the hedgerow as the boundary line. Even absent an agreement, plaintiff and his predecessors in title held undisturbed possession over to the hedgerow line for more than 20 years prior to Lambdin's purchase and plaintiff has been in possession under claim of right at all times since." *McLeod v. Lambdin* (1961), 22 Ill. 2d 232, 236, 174 N.E.2d 869, 871-72.

Defendant, in his answer to plaintiffs' complaint, affirmatively stated that the fence in question had been built in approximately 1954, was treated as the division line, and that defendant exclusively used and occupied under claim of ownership all land lying north of said fence.

■■ The requirements for adverse possession are that the possession be

hostile or adverse; actual; visible, notorious and exclusive; continuous; and under claim of ownership. (*Patient v. Stief* (1977), 49 Ill. App. 3d 99, 363 N.E.2d 927.) Section 1 of the Limitations Act (Ill. Rev. Stat. 1979, ch. 83, par. 1) provides that "no person shall commence an action for the recovery of lands, nor make an entry thereon, unless within twenty years after the right to bring such an action or make such entry first accrued, or within twenty years after he or those from, by, or under whom he claims, have acquired title or possession of the premises, except as now or hereafter provided in subsequent sections of this Act."

In the present case the testimony shows, as stated, that the line fence between the plaintiffs' property and the defendant's property had been in existence for more than 20 years prior to the commencement of this action, and that during that period the defendant and his father farmed up to that fence now in question.

Plaintiffs' attorney stated that adverse possession could not exist in this case as one can not establish adverse possession to public property. The basis for this argument is the existence of an 1866 survey which shows a proposed road approximately on this line, and a recently closed road running west to east, which ended approximately one-half mile from the plaintiff-defendant property line.

None of the witnesses' testimony, which covered a period of time back to approximately 1920, nor any of the other evidence established that this road was ever opened as far as the line between the plaintiffs' property and the defendant's property, or that any fences or hedgerows were erected based on that road in any way.

Section 6—316 of the Illinois Highway Code (Ill. Rev. Stat. 1979, ch. 121, par. 6—316), provides that "all township and district roads laid out as provided in this Division of this Code shall be opened within 2 years from the time of laying out the same. If the damages resulting from the establishing of such roads shall not be paid within 90 days from the time the money is in the hands of the treasurer of the road fund to pay the same, such new roads shall be deemed to be vacated."

As stated, there is no evidence that this road was opened within two years of being surveyed, and therefore, no evidence that any land on plaintiffs' property or defendant's property lying next to the division fence in question was ever public property.

The 1861 Ill. Laws §91[92], at 263, as passed by the 22d General Assembly, provided that all public roads shall be opened within five years or deemed vacated. The trial court determined that the road as platted was never opened. The only evidence which exists in the record that the road was open is the recollection of a township clerk that he walked the full length of the road in 1926 or 1927. The testimony of the clerk is ambiguous at best, and certainly the issue of whether the road was ever

opened is one of fact which we believe need not be reevaluated unless it is against the manifest weight of the evidence.

The finding of the trial court that the township road was never opened is sustained. It follows that the road was vacated five years after the plat was filed, or in 1871, and since that time it would have been possible for defendant and his predecessors to perfect title by adverse possession.

For the foregoing reasons, the judgment of the Circuit Court of Rock Island County is affirmed.

Affirmed.

ALLOY and STOUDER, JJ., concur.