IVA JEAN VINYARD *et al.,* Plaintiffs-Appellees, v. NORMAN VAUGHT *et al.,* Defendants-Appellants.

Fifth District   No. 5—84—0679

Opinion filed October 17, 1985.

Richard Kruger, of Kruger & Henry, of Metropolis, for appellants.

James H. Smith, of James H. Smith, P.C., of Shawneetown, and Glenn E. Moore, of Campbell, Furnall, Moore & Jacobsen, of Mt. Vernon, for appellees.

JUSTICE KARNS delivered the opinion of the court:

This appeal concerns a boundary line dispute among the several parties relating to real estate located adjacent to Round Pond in Gallatin County. The trial court entered a declaratory judgment in favor of the plaintiffs establishing the eastern boundaries of plaintiffs' property and ordered defendants to deliver possession of the land described in the judgment order.

Defendants' principal contention is that the trial court erroneously adopted the plat of survey of Donald L. Ellis in establishing the disputed boundary. In their complaint, plaintiffs sought a declaration that the southeast and northeast corners and the east boundary line of their property be established in accordance with a survey made by Ellis on July 29, 1980. The Ellis survey placed the section line between plaintiffs' property (section nine) and defendants' property (section 10) in the water of Round Pond, which means that plaintiffs' section includes the land located on the west bank of the pond. Defendants argue that Ellis failed to follow proper standards and procedures in the survey as required by Illinois law.

Ellis testified that he was asked to do a survey in May 1980 to establish the boundary lines of section nine. He was furnished a copy of a plat of survey prepared in 1965 by Hunter Martin, and obtained the original government survey of sections nine and 10 in his research at the courthouse. The accompanying field notes had been lost. Ellis explained that in order to establish the boundary line between sections nine and 10 it was necessary to ascertain the southeast and

northeast corners of section nine. However, the government monuments marking these corners could not be located. Ellis characterized the position of the southeast and northeast corners as "obliterated."

To reestablish the obliterated southeast corner of section nine, Ellis relied upon the Hunter Martin survey. He located a two-inch iron pipe located west of Round Pond, which Hunter Martin had placed as the southeast corner of section nine. Ellis used the placement as a temporary starting point, but disagreed that the pipe marked the southeast corner of section nine. He placed the corner 49.3 feet east of where it was shown on the Hunter Martin plat. Ellis then proceeded one mile north, and though he found no marker for the northeast corner, he located a strand of horse wire about five to six feet in length, which he believed to have been a line between two owners at one time and very near the boundary line between sections nine and 10. About a quarter of a mile west of the horse wire, Ellis found an open wire fence. In the area of the half-section line, he found an existing open wire fence running parallel to the west side of New Haven Road for approximately three hundred feet. Based on the three items described, Ellis established the obliterated northeast and southeast corners of section 9, and determined the boundary line of plaintiffs' section to be in Round Pond.

Defendants' chief complaint on appeal is that Ellis' methods in establishing the section corners were not in conformance with procedures recognized in Illinois law. Cited in support of their position are *Dorsey v. Ryan* (1982), 110 Ill. App. 3d 577, 442 N.E.2d 689, and *Pliske v. Yuskis* (1980), 83 Ill. App. 3d 89, 403 N.E.2d 710.

In *Dorsey,* the court reversed the trial court's adoption of a survey conducted pursuant to section 2 of "An Act to provide for the permanent survey of lands" (Ill. Rev. Stat. 1979, ch. 133, par. 12). The surveyor had concluded that an error was made in the original government field notes, and therefore relied on corners of an adjacent section which were not original corners and were not in agreement with original field notes. Citing *Irvin v. Rotramel* (1873), 68 Ill. 11, the appellate court held that the surveyor's search was uncertain and his conclusion improper. In *Irvin,* the supreme court reversed an order approving a plat of survey prepared in accordance with the predecessor of the statute cited above. In doing so, the court held that the statute requires that lost corners be established by reference to known government markers, and stated that it was error for the surveyor to ignore the identifiable original corners.

In each of these cases, the courts have made it clear that the object of a survey to establish lost or obliterated corners is to restore

the corners according to the original survey. A surveyor should first "establish the exterior lines and corners of the section according to the government survey and field notes, a copy of which every surveyor has or should have." (*Irvin v. Rotramel* (1873), 68 Ill. 11, 15.) In *Irvin,* the deficient survey was not prepared in accordance with the above-stated rule. In *Dorsey,* the surveyor concluded that an error had been made in the original survey, thereby ignoring the rule that the original measurements are controlling. We are unable to conclude that Ellis' survey was prepared in violation of the *Irvin* and *Dorsey* rules.

■ Two surveyors prepared plats to settle a boundary dispute in *Pliske v. Yuskis* (1980), 83 Ill. App. 3d 89, 403 N.E.2d 710. Plaintiff's surveyor in that case resorted to field notes and plats of the original survey because the lines and corners were obliterated—a procedure noted as acceptable by the court. (83 Ill. App. 3d 89, 94, 403 N.E.2d 710, 714.) Defendant's surveyor relied solely on a road plat on a half section line, and he admitted that he did not utilize standard procedures in locating the contested boundary line. Defendants have compared the improper survey in *Pliske* to that prepared by Ellis in the instant case, and insist that Ellis' admission that he didn't follow recognized written procedures in establishing the northeast corner of section nine renders his survey legally unacceptable. We cannot agree, as the defendants have failed to demonstrate that Ellis' methods fall short of any legally required standard.

Cited in *Dorsey v. Ryan* (1982), 110 Ill. App. 3d 577, 582-83, 442 N.E.2d 689, 693, are definitions of three types of corners (existent, obliterated and lost) noted in a handbook published by the United States Department of Interior, Bureau of Land Management. The manual is generally recognized as an authority on surveying, and was specifically acknowledged by Ellis in his testimony at trial. An obliterated corner such as those described by Ellis in the instant case may be recovered beyond a reasonable doubt by acts and testimony of the interested landowners, competent surveyors, witnesses, or some acceptable record evidence. (110 Ill. App. 3d 577, 583, 442 N.E.2d 689, 693.) Although the manual is a recognized authority, and its suggested methods were explicitly recognized in *Dorsey,* that court also affirmed that no specific regulation or law applicable to the reestablishment of lost corners existed. (110 Ill. App. 3d 577, 582, 442 N.E.2d 689, 692.) We likewise conclude that no legal rule exists in Illinois which mandates a certain procedure for establishing obliterated corners.

Although certain language in *Pliske* seems to suggest that requisite legal procedures have been fixed for the establishment of lost and

obliterated corners, we have found no Illinois cases which directly control the instant facts or mandate a specified surveying procedure. Nor do we believe that the survey rejected in *Pliske* was comparable to that conducted by Ellis.

■■ ■ Defendants also stress that the *Dorsey* case imposes on surveyors a duty to establish corners beyond a reasonable doubt. This language, however, is extrapolated from the government manual cited, and refers to what is actually possible of restoration and not to the legal burden of proof, which remains proof by a preponderance of the evidence, clearly satisfied here, Two years after Ellis' survey, a plat of survey of the disputed property was prepared by Jim Brown, at the request of the defendants. Brown's procedures for establishing the disputed corner were extensively outlined in his testimony. Conducted in accordance with the manual published by the Bureau of Land Management, Brown's survey was in substantial agreement with Ellis'. He utilized prior surveys relating to the subject property, including that of Hunter Martin. He shot a traverse around the entire area, located monuments on the north lines of sections nine and 10, found pieces of a fence on the north line of section nine, and found the two-inch pipe referenced by Hunter Martin. Based on information he considered sufficient evidence for restoration of the corner at issue, he placed the boundary corner 46.9 feet east of the pipe, a distance markedly close to the precise point established by Ellis. We find this fact persuasive in affirming the trial court's adoption of the Ellis survey.

■■ Next, defendants assert that the trial court misunderstood the burden of proof in plaintiffs' action for a declaratory judgment establishing the disputed boundary line. In a letter filed by the trial court, in which it articulated its findings and rationale, the court stated that "it is absolutely necessary that a boundary be established." Defendants argue that this statement implies that the court ignored the requirements that the plaintiffs affirmatively prove their case. Defendants' argument is meritless. Read in context, the court's statement demonstrated its appreciation of the totality and interdependence of the issues involved in plaintiffs' two-count complaint.

■■ ■ Third, defendants contend that the trial court erroneously ordered the defendants to vacate and deliver possession of the real estate as outlined in the plat of survey, because plaintiffs did not demand such relief in their prayer for a declaratory judgment. In rendering declaratory relief, it is within the power of the trial court to grant consequential relief, and the court should grant the relief necessary and proper to the determination of the controversy before it.

(*Bezin v. Ginsburg* (1978), 59 Ill. App. 3d 429, 440, 375 N.E.2d 468, 476-77.) At first blush, we would agree with defendants and hold that the additional relief granted exceeded the purview of the rule cited. This would appear to be so because the facts indicate that a possible claim in adverse possession could be raised. However, the defendants prevailed when they argued below that *res judicata* barred plaintiffs' claim of adverse possession in count II, by virtue of a prior judgment concerning the disputed property in which the parties in possession waived all future claims in adverse possession. The same possessory issue was raised by defendants in pretrial pleadings, and it is our belief that the estoppel doctrine would apply to bar subsequent claims. We are also mindful that it would be a needless waste of judicial resources to require plaintiffs to initiate an additional petition for further orders consistent with the declaration of rights already obtained. We therefore hold that it was proper for the court to grant the additional relief.

For the foregoing reasons, the judgment of the circuit court of Gallatin County is affirmed in all respects.

Affirmed.

KASSERMAN and WELCH, JJ., concur.