GERALDINE DIAL, Plaintiff-Appellee, *v.* THE CITY OF O'FALLON, Defendant-Appellant.

Fifth District   No. 78-373

Opinion filed August 30, 1979.

Joel V. Merkel, of O'Fallon, for appellant.

Jack Carey and Jeanne Sathre, both of Cohn, Carr, Korein, Kunin, Schlichter and Brennan, of East St. Louis, for appellee.

Mr. JUSTICE KUNCE delivered the opinion of the court:

A jury in the Circuit Court of St. Clair County awarded plaintiff-appellee Geraldine Dial the sum of $23,000 as damages occasioned by the backup of sewage into her home from a sanitary sewer system operated by the defendant-appellant, the City of O'Fallon. The city filed a post-trial motion seeking in the alternative a new trial, a reduction in the amount of damages awarded, or a judgment notwithstanding the verdict. This appeal followed denial of the post-trial motion.

The plaintiff's amended complaint alleged that her home was inundated by sewage from the city sewer system; that the city's actions in maintaining the sewer system in such a way as to deposit waste products into the plaintiff's domicile constituted a trespass; and that as a direct and proximate result she suffered discomfort and annoyance, expended money for necessary repairs and replacements to her personal property, suffered a diminished market value of her real property, and lost the use of the lower level of her home. The complaint prayed for judgment in a sum of money which would fairly and adequately compensate her for her damages.

The facts are not seriously in dispute. The lower level of the plaintiff's modern ranch-style home was a furnished "walk-out type of basement arrangement" consisting of a family room with built-in fireplace and bookshelves, bedroom, closet, bath, and utility room with washer and dryer, furnace and water heater. In addition to the furnishings, numerous books, family pictures, clothing, craft materials, and other items of personal property were stored on the lower level of the home. Suffice it to say that black sewage water, reaching at times depths of more than two feet, filled the lower level of the home and covered most of the furniture. As a result of the inundations, the furnishings, personal items, and appliances in the lower level of the plaintiff's home were all either damaged or destroyed, and an accumulation of 25 years' worth of family photographs, slides, and other irreplaceable personal items was lost. The lower level of the home was virtually unusable for a year and the plaintiff had to expend considerable time, effort, and money in repairing, repainting, replastering, and removing damaged personalty.

The backups resulted from the closing by the city of an overflow pipe which had served as a bypass or relief to the sewer system. The city was aware that such backups would result from closing the overflow. The Environmental Protection Agency had objected to the use of the overflow, and had given the city until June 1975 (some six months after the worst inundation at the plaintiff's home) to come up with a solution to the problem. The defendant was prohibited from introducing evidence as to other factors leading to the closing of the overflow. An offer of proof was made that the closing was a result of a negotiated settlement of another lawsuit, and that the city attorney was of the opinion that use of the overflow was unlawful.

The plaintiff was permitted to give her opinion as to the value of certain personal property destroyed by the inundations, in the approximate amount of $3,500.00. In addition, she called as an expert witness an appraiser who testified that the value of her home had depreciated some 30 percent because of the water damage. The trial court sustained objections to questions seeking the appraiser's opinion as to the value

of the real estate before the damage, and therefore no dollar amounts were before the jury as to this item of damages.

On appeal, the city contends that the conduct proved does not give rise to liability for trespass, and that the court below erred in excluding evidence as to the reason for the city's action in closing the overflow.[1] We find the city's position untenable.

■■ The gist of the action of trespass to realty is an unlawful entry upon another's possession unlawfully and with force; the form of the instrumentality by which the close is broken is immaterial. 87 C.J.S. *Trespass* §§12-13 at 964-66 (1954):

> "The entry need not be in person * * *. Thus, the *trespass may be committed by casting earth, or other substances, upon another's land, by projecting anything into, over, or upon the land; by discharging water thereon*, or by felling trees so that they fall upon the land. Trespass may also be committed by shooting onto or over the land, by explosions, by throwing flammable substances, by blasting operations, by discharging soot and carbon * * *. *It is immaterial whether or not the person committing the trespass is in the exercise of due care. * * *"* (Emphasis added.) 87 C.J.S. *Trespass* §13, at 966-67 (1954), citing *inter alia, Maton Bros. v. Central Illinois Public Service Co.* (1933), 269 Ill. App. 99, 115, *affirmed* (1934), 356 Ill. 584, 191 N.E. 321 (gas leak).

■■■ The jury here was instructed, in accordance with the *Maton* case, that the projection of any substance upon the lands of another without legal right is a trespass. Although the defendant withdrew its objection to this instruction at trial, it contends here that trespass will not lie absent a showing of intent or negligence. Negligence is an alien concept to a cause of action sounding in trespass. In one sense, "intent" is required, but it need not be the intent to do harm:

> "In order to constitute trespass, an unlawful intent is not necessary. Accordingly, *the intent or motive with which the act is done is immaterial* with respect to the doer's liability therefor * * *. * * * *A wrongful trespasser is liable for all the detriment * * * caused by his trespass whether or not he acted in good faith and with reasonable care*, or whether he acted in ignorance of plaintiff's right, or under mistake of fact or law. * * *
>
> On the other hand, the act must be consciously done. Although it is not necessary that the trespasser intend to commit a trespass or even that he know that his act will constitute a trespass, *it is*

---

[1] In the city's brief on appeal, it also contended that the damages awarded were excessive. This issue, however, was abandoned at oral argument, and thus we will not consider it.

*required for trespass that there be an intentional act and an intent to do the very act which results in the trespass.* In this sense trespass has been said to be an intentional harm, or a willful or intentional wrong. Thus, where there is no intentional act voluntarily done there is no trespass. * * *" (Emphasis added.) 87 C.J.S. *Trespass* §5, at 959-60 (1954), citing, *inter alia, Checkley v. Illinois Central R.R. Co.* (1913), 257 Ill. 491, 499, 100 N.E. 942 (ignorance or mistake will not exempt trespasser from liability for actual damages).

■■ Here, there is no question but that agents of the city intentionally and voluntarily did an act which resulted in a trespass: closing the sewer overflow pipe. Although no further intentional act was required, the city, in addition, knew that backups would result from closing the overflow. We conclude that the evidence presented was sufficient to prove a trespass.[2]

■■ Nor can we agree with the city that it should have been permitted to introduce evidence that it had closed the overflow pipe as part of a negotiated settlement of another lawsuit and that it was the opinion of the city attorney that permitting the overflow to remain open would have been a violation of law. This evidence was properly excluded as irrelevant. It tended to prove neither that the defendant was legally authorized to discharge sewage on the plaintiff's property nor any other fact in issue. It could only have served to mislead the jury and confuse the issues in the case. The defendant committed a trespass and is liable for the damages caused thereby.

For the foregoing reasons, the judgment of the Circuit Court of St. Clair County is affirmed.

Affirmed.

JONES, P. J., and G. MORAN, J., concur.

---

[2] In the days of the forms of action, there might have been room for dispute as to whether trespass *quare clausum fregit* or an action on the case were the proper remedy in a situation such as that presented on this appeal. (See, *e.g.*, 14 C.J.S. *Action on Case* §5, at 6 (1939).) This distinction need not detain us, however, as it was abolished by section 36 of the Practice Act of 1907. See Ill. Ann. Stat., ch. 110, par. 31, Historical and Practice Notes, at 356 (Smith-Hurd 1968).