JASON SHARPS *et al.*, Plaintiffs-Appellants, *v.* SEYMOUR STEIN *et al.*, Defendants-Appellees.

First District (5th Division)    No. 79-1739

Opinion filed November 7, 1980.

Block, Levy & Becker, Chartered, of Chicago, for appellants.

William P. Rosenthal and Ross P. Benjamin, both of Chicago (Rosenthal & Schanfield, of counsel), for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiffs, Jason Sharps and Ben A. Borenstein, filed a two-count amended complaint against defendants, Seymour Stein and Lester Stein, relative to a joint venture undertaking. In count I Sharps sought an accounting, a certified audit, and judgment for a proportionate return of the compensation received by the Steins contrary to the venture agreement. In count II Borenstein additionally sought an adjudication that his acceptance and release as to Steins' compensation was null and void. Steins' motion to dismiss the amended complaint as insufficient in law was granted. Sharps and Borenstein have appealed. We affirm.

The amended complaint contains the following pertinent allegations:

Count I: On July 10, 1970, Sharps and Borenstein entered into a joint venture agreement with the Steins and others regarding the construction, ownership and management of Americana Towers Apartments, a 32-story apartment building. Initially, Sharps and Borenstein each owned a 2½ percent interest in the assets and net profits and losses. The Steins each owned 34 percent and were designated and acted as "managing venturers." Thereafter, additional investors were permitted to become venturers. Ultimately, the interest of Sharps and Borenstein was reduced to 1.88 percent each and the Steins to 16.84 percent each.

The apartment complex was erected and operated pursuant to the venture agreement until its sale in 1978. On September 26, 1977, the Steins, by letter to the venturers, advised of a proposed sale of the property for $15,000,000 to CMS Realty Corporation. It stated that if consummated the joint venture would incur certain expenses, including broker's commissions and finders' fees of $375,000 payable in equal portions of $125,000 each to Draper & Kramer, Lester Stein and Seymour Stein. A letter of October 5, 1977, contained a projected distribution of the proposed sale proceeds for expenses and to the venturers. It set forth that Steins additionally claimed an item of $250,000 (other than the finders' fee) for funds advanced to the venture over the past years and a further item of $110,000 as a balance of unpaid compensation for services

during the construction period. By letter dated October 11, 1977, Sharps objected to the payment of any amount contrary to the venture agreement, denied any prior agreement of the venturers to pay the $110,000 claimed, and acknowledged that the $250,000 allegedly advanced was to be satisfactorily documented by the accountants.[1]

Following the sale, on December 22, 1978, the Steins by letter submitted a proposed distribution of all of the cash held by the venture except for a $100,000 contingency retention. Distribution was expressly conditioned upon return of an executed copy of the letter to indicate approval of the accounting and distribution, and also acknowledging fulfillment of any and all obligations of the "managing partners." Attached was a financial statement as of November 30, 1978, "prepared from the books without audit" by certified public accountants which concluded "Due to the limited scope of our engagement, we are unable to express an opinion on these statements." The financial statement did not disclose whether the Steins had paid themselves the claims for additional compensation.

All of the venturers were paid their distributive shares in January 1979 except Sharps, who had objected to executing the letter of approval and release. Subsequent to the filing of the original complaint, Steins paid him $46,417 without prejudice to Sharps' remaining claims for relief.

The aforementioned joint venture agreement, financial statements and correspondence were attached as exhibits and incorporated by reference in count I. Sharps prayed for an accounting by the Steins for all compensation or remuneration received by them without his consent and contrary to section 8 of the agreement, for judgment on the accounting, and for a certified audit which would include the sale, distribution of proceeds, and all compensation paid to Steins at any time as provided by section 7 of the agreement.

Count II: Borenstein adopted the allegations and exhibits alleged in count I, omitting only the paragraphs alleging Sharps' rejection of the letter of approval and release. He instead alleged receipt of his proportionate share of the sale proceeds remaining after retention and payment by Steins to themselves of the disputed $360,000, after executing the approval and release; that without its execution no venturer including him would have received any of the proceeds; and that the approval and release as to Steins' compensation is null and void in that the instrument is without consideration, a breach of Steins' fiduciary duties, contrary to section 8, and executed under duress upon threats that no funds would be disbursed to any venturer unless and until executed. Borenstein prayed

---

[1] The item of $250,000 allegedly advanced was not addressed by the parties and is not involved in this appeal.

that the release be declared null and void; that Steins account and provide a certified audit for 1977, 1978 and 1979, including the compensation received by Steins; and judgment on the accounting.

The Steins filed a motion to dismiss the amended complaint as insufficient in law pursuant to section 45 of the Illinois Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 45.) The court granted the motion and dismissed the amended complaint with prejudice. This appeal followed.

OPINION

I.

■■■ The central question presented for review is whether the amended complaint sufficiently states a cause of action to withstand the motion to dismiss.

The motion admits all facts well pleaded and the reasonable inferences which may be drawn therefrom are taken as true for the purposes of the motion. (*Giers v. Anten* (1978), 68 Ill. App. 3d 535, 539, 386 N.E.2d 82, 85; *Horwath v. Parker* (1979), 72 Ill. App. 3d 128, 134, 390 N.E.2d 72, 77; *Courtney v. Board of Education* (1972), 6 Ill. App. 3d 424, 425, 286 N.E.2d 25, 26.) The attached exhibits are an integral part of the complaint and must be so considered. (*Fowley v. Braden* (1954), 4 Ill. 2d 355, 360, 122 N.E.2d 559, 562.) A reviewing court should interpret the facts alleged in the complaint in the light most favorable to the plaintiff. (*Farns Associates, Inc. v. Sternback* (1979), 77 Ill. App. 3d 249, 252, 395 N.E.2d 1103, 1105; *Cipolla v. Bloom Township High School Dist. No. 206* (1979), 69 Ill. App. 3d 434, 437, 388 N.E.2d 31, 34.) Additionally, the complaint should not be dismissed unless the pleadings disclose that no set of facts could be proved that will entitle the plaintiff to relief. (*Agee v. First National Bank* (1979), 68 Ill. App. 3d 794, 386 N.E.2d 899; *Patton v. T.O.F.C., Inc.* (1979), 79 Ill. App. 3d 94, 98, 398 N.E.2d 313.) In sum, the pleadings are to be liberally construed with the view of doing substantial justice between the parties. Ill. Rev. Stat. 1977, ch. 110, par. 33(3).

II.

Sharps contends that section 8 of the venture agreement requires the unanimous approval of all of the venturers to authorize the payment of compensation to the Steins as joint venturers. Steins maintain that the general requirements as to compensation were modified by the express terms of the venture agreement.

■■ A joint venture is an association of two or more persons to carry out a single enterprise for profit. (*Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, 318, 396 N.E.2d 524.) When a joint venture is found to exist, the legal principles pertaining to the relationship between

partners govern. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 438, 394 N.E.2d 380, 384; *Smith.*) The duties and obligations of partners arising from their written agreement are concisely stated in *SRI Corp. v. First National Bank of Rock Island* (1979), 75 Ill. App. 3d 350, 355, 393 N.E.2d 1287, 1291-92, quoting 59 Am. Jur. 2d *Partnership* §33, at 956 (1971):

> "The duties and obligations of partners arising from a partnership relation are regulated by the express contract as far as they are covered thereby. While a written agreement is not necessary, where it does exist it constitutes the measure of the partners' rights and obligations. The written agreement, or 'partnership articles' as it is usually called, may include practically any provision desired. And while the rights and duties of the partners in relation to the partnership are governed by the Uniform Partnership Act, the Uniform Act also provides that such rules are subject to any agreement between the parties."

The venture agreement includes the following pertinent provisions:

> "*Section 8. Venturers' Compensation.* No salaries, fees, commissions or other compensation shall be paid to any Venturer by the Venture for any services rendered to the Venture, or in connection with its business, affairs, operations, assets or property, *except as shall be agreed upon by Venturers.*
>
> *Section 9. Management.* Except as otherwise expressly provided herein, *all questions* relating to any and all of said Property and other assets of the Venture and to the operation and conduct of the Venture, including without limitation, the purchase or other acquisition, improvement, use, sale, lease, operation, management, mortgage, withdrawal, distribution or other disposition (herein collectively referred to as 'management') of any part or all of said Property and other assets of the Venture, *shall be determined by those Venturers having in the aggregate Profit-Sharing Percentages of at least sixty percent (60%).* * * *
>
> *Section 16. Miscellaneous.*
>
>              * * *
>
>     (c) *Venturers' Determinations.* Except as to Section 14 hereof, whenever this Agreement provides that a matter is to be determined or agreed upon by the Venturers, such determination shall be made in the manner and form provided for in Section 9 of this Agreement." (Emphasis added.)

Section 18(f) of the Uniform Partnership Act (Ill. Rev. Stat. 1977, ch. 106½, par. 18(f)) codifies the general common law rule that absent an agreement to the contrary, partners are not entitled to remuneration for

services they render to the partnership business. Here, section 8 of the venture agreement states that "no salaries, fees, commissions or other compensation shall be paid to any Venturer * * * , except as shall be agreed upon by Venturers." Sharps argues that this section requires unanimous approval prior to the payment of such compensation. Steins respond that the general requirement of unanimity was altered by the express terms of section 16(c) of the venture agreement. It states that "except as to section 14 hereof,[2] whenever this Agreement provides that a matter is to be determined or agreed upon by the Venturers, such determination shall be made in the manner and form provided for in Section 9 of this Agreement." Section 9 of the venture agreement provides that all questions shall be determined by those venturers having an aggregate profit-sharing percentage of at least 60 percent.

■■ The intention of the parties must be ascertained, if possible, from the language employed in the instrument itself and where there is not ambiguity, from such language alone. (*Gardiakos v. Vanguard Communications, Inc.* (1976), 38 Ill. App. 3d 937, 939, 350 N.E.2d 210, 212; *Industrial Commodity Corp. v. E. J. Brach & Sons* (1968), 92 Ill. App. 2d 163, 166, 235 N.E.2d 857, 859.) If the writing is unambiguous, the intention of the parties must necessarily be determined solely from the language used in the document. (*Nitrin, Inc. v. Bethlehem Steel Corp.* (1976), 35 Ill. App. 3d 577, 594, 342 N.E.2d 65, 78; *Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 364, 247 N.E.2d 886, 888.) Whether an ambiguity exists is a question of law for the court to determine. *Gardiakos*, 38 Ill. App. 3d 937, 940, 350 N.E.2d 210, 212.

■■ A review of the venture agreement in its entirety fails to indicate that the pertinent provisions are fairly susceptible to more than one interpretation concerning the authorization of compensation. The agreement clearly and unambiguously provides that compensation could be agreed upon by 60 percent of the venturers. Therefore, unanimous concurrence is not required. It must be noted that the venture agreement specifically excepts only section 14 from the operation of section 16(c), which exception is not here applicable. However, had it been so intended, the venturers could have just as readily exempted section 8 regarding compensation. Consequently, the agreement of neither Sharps nor Borenstein, each with only 1.88 percent ownership, was necessary to authorize compensation. (See *SRI Corp. v. First National Bank* (1979), 75 Ill. App. 3d 350, 393 N.E.2d 1287.) Accordingly, the authorization of compensation by the remaining venturers having more than a 60-percent profit-sharing interest was in

---

[2] Section 14 is not pertinent here. It provides that no venturer may dispose of his interest unless a first refusal option to acquire such interest is afforded to the other remaining venturers.

compliance with the requirements of the venture agreement and was sufficient to approve the payment.

## III.

Sharps next contends that he is entitled to a general accounting and certified audit independent of any demonstration of Steins' breach of fiduciary duty since section 7 of the venture agreement provides:

"As soon as practical after the end of each calendar year, * * * , a general accounting and audit shall be made by a certified public accountant, covering the assets, properties, liabilities, * * * , and a full detailed statement shall be furnished to each Venturer, showing assets, properties, liabilities and net worth and the profits and losses of the Venture for the preceding year. Each Venturer shall have the right to object to such statement by giving notice to the other Venturers within thirty (30) days after such statement is received * * * ."

The relief requested is an order upon Steins to obtain and provide a general accounting and certified audit. It is therefore a request for specific performance, the rendering as nearly as practicable of a promised performance through a judgment or order. (Restatement of Contracts §326(c) (1932); 39A Words and Phrases, *Specific Performance* 458 (1953); also see *Carter Oil Co. v. Owen* (E.D. Ill. 1939), 27 F. Supp. 74, 82; 33A Ill. L. & Prac. *Specific Performance* §2 (1970).) Steins maintain that an accounting and audit would be a mere formality, superfluous and serve no useful purpose. Sharps contends that while the burden may be considerable, this does not eliminate the requirement of a proper account where a duty to account exists. (*Polikoff v. Levy* (1971), 132 Ill. App. 2d 492, 500, 270 N.E.2d 540, 547.) However, whether an accounting is ordered remains a matter largely within the discretion of the court. *Holsz v. Stephen* (1936), 362 Ill. 527, 532, 200 N.E. 601, 603; *Dailey v. Sunset Hills Trust Estate* (1975), 30 Ill. App. 3d 121, 125, 332 N.E.2d 158, 162.

Sharps' amended complaint alleges that Steins only provided the financial statements of November 30, 1978, prepared by the auditors principally as a report to management without expressing an opinion thereon, and that Steins failed and refused to account as to the $360,000 (challenged as unauthorized compensation) and have a legal duty to account and provide an audit and accounting as provided by section 7 of the venture agreement. We have hereinbefore concluded that the allegations and exhibits established that the disputed $360,000 was validly authorized compensation. Therefore, it appears from the remaining allegations that an accounting as to the items comprising that compensation is not necessary and would serve no useful purpose. The amended

complaint does not allege as a basis any fraud, deception, concealment, secret profit, improper payment, false accounts or other breach of duty, nor that anything would be shown due for which he should account to the venture under the terms of the agreement or under sections 21 and 22 of the Uniform Partnership Act (Ill. Rev. Stat. 1977, ch. 106½, pars. 21 and 22). Neither does it allege any denial of Sharps' right under the agreement to examine the books and records of the venture, but instead it discloses Steins' invitation for such an examination with the auditors to be available for any questions thereon. Therefore, the pleadings fail to show that anything would be shown due Sharps or of any necessity for the accounting and audit. The requested acts would be useless and without benefit to Sharps and at most a mere formality.

● 6 It is well established that a court will not use its broad and unique powers of specific performance to do a vain thing nor to order a course of conduct which may prove nugatory or without benefit to the persons seeking such relief (*Carver v. Brien* (1942), 315 Ill. App. 643, 654, 43 N.E.2d 597) nor require the performance of a useless act. (*Neely v. Coffey* (1980), 81 Ill. 2d 439, 410 N.E.2d 839.) While accounting may be afforded to complete relief, there must initially be some basis upon which equitable relief is warranted. (*Webster v. Hall* (1944), 388 Ill. 401, 58 N.E.2d 575.) Even where the right exists, it does not follow that it must be ordered where no useful purpose will be served. *Gianakos v. Magiros* (1964), 238 Md. 178, 188-89, 208 A.2d 718, 724; *Metaxa v. Coutros* (1957), 211 Md. 499, 503-04, 128 A.2d 273, 276.

An examination of the amended complaint indicates that its real purpose was specifically to disallow the items comprising the $360,000 compensation credited to Steins and to recover judgment for Sharps' proportionate share thereof. The accounting and audit were only incidental and auxiliary to that purpose. In and of itself, the required performance would be nugatory, a useless act, and a mere formality. It would provide no real benefit for Sharps but would impose an unnecessary burden and expense on Steins as well as on the other venturers. Upon eliminating consideration of the $360,000 compensation, the amended complaint fails to show that Sharps claims that anything would be due upon an accounting and audit. Therefore, the dismissal of count I of the amended complaint was proper.

## IV.

Borenstein's count II of the amended complaint incorporates Sharps' allegations relevant to the accounting, audit and the compensation payments made to Steins. He then alleges that all of the venturers other than Sharps executed and delivered the approval and release to Steins and

were paid their proportionate share of cash available after retention by Steins of the $360,000 compensation.

Count II further alleges that his approval and release is null and void in that it is without consideration, a breach of Steins' fiduciary duties, contrary to section 8 of the venture agreement, and executed under duress by Steins upon threat that no funds would be disbursed to any venturer unless and until said venturer executed and delivered said instrument to Steins. He sought an order declaring the approval and release null and void, insofar as it purported to authorize Steins to receive any compensation from the joint venture other than their proportionate interest in the profits or gain.

An examination of count II indicates that Borenstein initially seeks to invalidate the approval and release only for the purpose of raising the same contentions and reaching the same relief sought by Sharps in count I. Assuming *arguendo* that the approval and release is determined to be null and void as to Borenstein, the allegations as to the accounting, audit and Steins' $360,000 compensation are subject to the same inadequacies as count I. Therefore, we find it unnecessary to consider the sufficiency of the allegations of count II that the approval and release is null and void.

For the reasons stated, the order of the trial court dismissing the amended complaint is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.