FREDERICK W. KELCH *et al.*, Petitioners-Appellees, v. RITA WASER IZARD, Respondent-Appellant.

Fifth District   No. 5—90—0616

Opinion filed April 20, 1992.

Jay M. Huetsch, of Adams & Huetsch, of Waterloo, for appellant.

Crowder & Scoggins, Ltd., of Columbia (Mark C. Scoggins, of counsel), for appellees.

JUSTICE LEWIS delivered the opinion of the court:

Respondent, Rita Waser Izard, appeals the circuit court's order approving a commission of surveyors' report and accepting the sur-

veyors' plat of survey reestablishing the boundary line between her property and the property of the petitioners, Frederick and Sheila Kelch. On appeal, the respondent raises three issues: (1) that the circuit court erred in denying her motions to dismiss the petitioners' petition for appointment of a commission of surveyors, (2) that the court lacked subject matter jurisdiction of this cause, and (3) that the court's acceptance and approval of the surveyors' report and plat of survey was against the manifest weight of the evidence. We affirm for the reasons set forth below.

The facts of this case are as follows: On September 28, 1987, the petitioners filed a petition for appointment of commission of surveyors pursuant to section 2 of "An Act to provide for the permanent survey of lands" (Ill. Rev. Stat. 1987, ch. 133, par. 12). In this petition, the petitioners alleged that they were the owners in fee simple of the land described in pertinent part as follows:

"The west half of the Northwest Quarter of Section 4 in Township 3 South, Range 9 West of the 3rd P.M., Monroe County, Illinois ***."

The petitioners referred to this property as Tract I in their petition.

The petitioners further stated in their petition that the respondent was the owner of real estate immediately adjacent to the east side of their property and described the property as follows:

"Forty-nine (49) and $^{14}/_{100}$ acres of equal width off of the west side of the east half of the Northwest Quarter of Section 4, Township 3 South, Range 9 West of the 3rd P.M., Monroe County, Illinois."

The petitioners referred to the respondent's property as Tract II.

The petitioners alleged in their petition that there is a dispute between them and the respondent regarding the boundary between their properties, i.e., the dividing line between the east and west halves of the northwest quarter of section 4. According to the petitioners' petition, the respondent refused to enter into an agreement for the appointment of a surveyor "to establish and re-establish the lines and corners defining the boundary." Therefore, the petitioners asked that the court appoint a commission of surveyors to make a survey and permanently establish the boundary line between the petitioners' and the respondent's property.

Subsequently, the respondent filed two motions to dismiss. The first motion was filed pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615), and, in this motion, the respondent sought the dismissal of the petitioners' petition on the basis that the petition was insufficient at law. The respon-

dent's second motion to dismiss was based upon the doctrines of *res judicata* and collateral estoppel. The court denied the respondent's two motions to dismiss, and ultimately, the court granted the petitioners' petition for appointment of a commission of surveyors. In a subsequent order, the court appointed three surveyors to the commission to survey the boundary in dispute.

The commission of surveyors conducted its survey and submitted its report to the court, and the respondent filed an objection to the report on May 14, 1990. A hearing on the report was held on May 30, 1990, following which the court approved orally the commission's report and accepted the commission's plat of the survey of the boundaries established. In the court's written order of June 20, 1990, the court approved the report and accepted the survey plat prepared by the commission of surveyors, ordered the plat of the survey to be recorded in the office of the Monroe County recorder of deeds, and ordered the cost of the survey to be divided equally between the petitioners and the respondent. The respondent filed a post-trial motion which was denied by the court, following which the respondent filed this appeal. No further facts will be set forth at this juncture, as the facts pertinent to a specific issue will be delineated under the discussion of that issue.

Our first consideration on appeal is the respondent's issue that the court erred in not granting her motions to dismiss. The first argument of the respondent concerns her motion to dismiss pursuant to section 2—615, in which she alleged the petitioners' petition was insufficient at law. The respondent argues that the petitioners' petition was insufficient as the petitioner failed to allege that the boundary in dispute was an original boundary established by the United States. She further asserts that, since the appointment of a commission of surveyors is only to reestablish original corners and boundaries established by the United States and not for the establishment of new corners and boundaries, and that since the petitioners did not allege that the boundary in dispute was a boundary established by an original government survey, the petition was insufficient at law. We disagree.

In reviewing a motion to dismiss, all facts well pleaded and the reasonable inferences which may be drawn from those facts are taken as true. (*Sharps v. Stein* (1980), 90 Ill. App. 3d 435, 413 N.E.2d 75.) Additionally, a reviewing court must interpret the facts alleged in the light most favorable to the plaintiff. (*Sharps v. Stein* (1980), 90 Ill. App. 3d 435, 413 N.E.2d 75.) A complaint will not be set aside unless the pleadings disclose no set of facts could be proved that will entitle the plaintiff to relief. (*Sharps v. Stein* (1980), 90 Ill. App. 3d 435, 413

N.E.2d 75.) In determining whether a complaint is adequate, it is to be liberally construed with a view towards doing substantial justice between the parties, and no complaint is bad if it contains such information as reasonably informs the opposite party of the nature of the claim which he is called upon to meet. (*Anixter Brothers, Inc. v. Central Steel & Wire Co.* (1984), 123 Ill. App. 3d 947, 463 N.E.2d 913.) Under these principles, we do not find that the petitioners' petition was insufficient at law.

■ The statute involved in this case states in pertinent part as follows:

> "Whenever one or more proprietors of lands in this state, the corners and boundaries of whose lands are lost, destroyed, or are in dispute, or who are desirous of having said corners and boundaries permanently re-established, and who will not enter into an agreement as provided by section one of this act, it shall be lawful for said proprietor or proprietors that they shall cause a notice, *** that *** he, she or they will make application to the circuit court of the county in which said lands are situated, for the appointment of a commission of surveyors to make survey of and to permanently establish said corners and boundaries ***." (Ill. Rev. Stat. 1987, ch. 133, par. 12.)

It is clear from the foregoing language of the statute that to seek relief under the statute a petition must allege that a boundary is in dispute and that the proprietors will not enter into an agreement to have the land surveyed.

Further, although the case law has set forth the precedent that a commission of surveyors appointed under this statute cannot be used to establish new corners and boundaries (*Burns v. Kimber* (1912), 176 Ill. App. 515), it is this court's understanding from a reading of the statute and the case law that this reference is such that a commission cannot be used to alter the original corners and boundaries originally established by the United States, as these original surveys were the cornerstones for establishing further boundaries. However, this court does not interpret the case law and the statute as prohibiting the use of a commission of surveyors appointed by the court to permanently establish or reestablish interior boundaries that have been established by other surveyors when those boundaries were based upon the exterior boundaries set by the original corners and boundaries done by the United States.

■ The petitioners, in their petition, sought to "establish and reestablish" the boundary in dispute. From this language and the reasonable inference to be drawn therefrom, it was evident that the

boundary in dispute was an established boundary and not a "new" boundary, and that the boundary was an interior boundary based upon the exterior boundaries and corners established by the United States government for the northwest quarter of section 4. Thus, based upon the principles for reviewing a motion to dismiss and the statute and case law applicable to this cause of action, we find that the facts alleged in the petitioners' petition were sufficient to withstand a motion to dismiss under section 2—615. Further, it was clear that the respondent knew what she was to defend against from the language of the petition.

We next consider the respondent's contention that the court erred in denying her motion to dismiss under the doctrines of *res judicata* and collateral estoppel, because the issue of the disputed boundary line was settled in a prior lawsuit (case No. 85—L—23) between the McNeills, the predecessors in interest to the Kelches' property, and Carlton Izard, the respondent's husband. The respondent argues that this issue is *res judicata* because this issue of the disputed boundary was raised or could have been raised in the prior lawsuit. The respondent also asserts that because the cause of action between the McNeills and the respondent's husband was dismissed with prejudice and was thus an adjudication of the merits of the issue, the issue is *res judicata.*

■■■ ■ The doctrine of *res judicata* is applicable when a subsequent lawsuit arises between the same parties and is based upon the same cause of action as the first lawsuit. (*Northern Trust Co. v. Aetna Life & Surety Co.* (1989), 192 Ill. App. 3d 901, 549 N.E.2d 712.) Under this doctrine, a final judgment on the merits is conclusive as to the rights of the same parties in subsequent litigation as to all issues which were or which might have been raised in the previous litigation. (*Northern Trust Co. v. Aetna Life & Surety Co.* (1989), 192 Ill. App. 3d 901, 549 N.E.2d 712.) Collateral estoppel is applicable when a party participates in two separate lawsuits and a controlling fact or question material to the determination has been adjudicated against that party in the former suit; however, the judgment in the first suit is binding only with regard to issues that were actually litigated. (*Northern Trust Co. v. Aetna Life & Surety Co.* (1989), 192 Ill. App. 3d 901, 549 N.E.2d 712.) It is the party who raises this defense who has the burden of showing what was determined by the prior judgment, and if any uncertainty exists, the doctrine will not be applied. (*Northern Trust Co. v. Aetna Life & Surety Co.* (1989), 192 Ill. App. 3d 901, 549 N.E.2d 712.) Here, we do not find that there was

identity of cause of action between the two lawsuits to make the doctrine of *res judicata* applicable.

In the first lawsuit, captioned Paul S. McNeill and Lucille E. McNeill v. Carlton Izard, case No. 85—L—23, a six-count complaint was filed. The facts surrounding this complaint were that the defendant, Carlton Izard, shouted, threatened and shot a gun in the direction of Lucille McNeill, while she was riding a horse. The first five counts concerned causes of action relating to this incident and are not relevant to this discussion. In the sixth count, the plaintiffs alleged that they owned and possessed the property adjacent to the property owned and possessed by the defendant. In the third paragraph of this count, the plaintiffs alleged:

> "During the Summer of 1984, the Defendant built a fence which encroached on Plaintiffs' property approximately twenty-one (21) feet and prohibited ingress and egress over the entire length of the boundary line between Plaintiffs' property and Defendant's property."

It is this third paragraph to which the respondent in the current lawsuit directs our attention to support her contention that the issue of the disputed boundary was litigated in the previous lawsuit, thereby making the doctrine of *res judicata* applicable. We disagree.

■■■ A further reading of the sixth count in the lawsuit between the McNeills and the respondent's husband reveals that the cause of action raised in this count was for trespass. Trespass is not the same cause of action as a request for a determination of a permanent boundary in a boundary dispute. The elements of the cause of action of trespass were stated in *Dial v. City of O'Fallon* (1979), 75 Ill. App. 3d 782, 394 N.E.2d 84, *aff'd & remanded* (1980), 81 Ill. 2d 548, 411 N.E.2d 217. In *Dial*, this court stated that "[t]he gist of the action of trespass to realty is an unlawful entry upon another's possession unlawfully and with force; the form of the instrumentality by which the close is broken is immaterial." (*Dial*, 75 Ill. App. 3d at 784, 394 N.E.2d at 86.) Thus, one of the elements of trespass is possession of the property. The purpose of the appointment of a commission of surveyors is to establish the permanent boundary of property and not to establish the title to property. (*Krause v. Nolte* (1905), 217 Ill. 298, 75 N.E. 362.) It follows that if the appointment of a commission of surveyors cannot be used to establish title to property, it likewise will not establish possession of property. Thus, the resolution of the trespass action did not involve the issue of the disputed boundary line but only possession. Further, the disputed boundary issue was not an issue that could have been raised in the prior trespass action, as a determi-

nation of the disputed boundary line would not have resolved the trespass action. Therefore, the doctrine of *res judicata* was not applicable to the petitioners' petition for an appointment of a commission of surveyors to resolve the boundary-line dispute.

Moreover, there is a great deal of uncertainty of whether this issue was decided in the prior judgment. In the record of the instant case, the six-count complaint, a summons to Carlton Izard, and a "Stipulation for Dismissal" were the only documents provided from the prior cause of action. In the "Stipulation for Dismissal," it was stated:

> "This cause having been compromised and settled, it is hereby stipulated and agreed by and between the parties hereto, by their counsel, that the action be dismissed with prejudice to the plaintiffs at plaintiffs' cost."

In conjunction with the foregoing stipulation, the court entered an order dismissing all six counts of the plaintiffs' complaint with prejudice. And, while the law is that a dismissal with prejudice is tantamount to an adjudication on the merits and *res judicata* could apply (*Van Slambrouck v. Marshall Field & Co.* (1981), 98 Ill. App. 3d 485, 424 N.E.2d 679) (that is, applicable only if we had concluded that trespass and the current action were the same causes of action), an affidavit filed with the petitioners' objection to the respondent's motion to dismiss leads this court to conclude that, even if the essential elements of *res judicata* were satisfied, we would not apply the doctrine as unfairness would result. *Northern Trust Co. v. Aetna Life & Surety Co.* (1989), 192 Ill. App. 3d 901, 549 N.E.2d 712.

In the petitioners' attorney's affidavit filed with their objection, he stated that he represented the McNeills in the prior case, and that on May 18, 1987, he offered to stipulate to the appointment of a commission of surveyors to determine the boundary line between the McNeills' and the Izards' property. Carlton Izard's attorney refused to allow the survey at that time on the basis that the case concerned a trespass and was not for determining a boundary line; that the owner of the property was Rita Izard, who was not a party to the suit with the McNeills; and that that they did not intend to litigate the location of the boundary line in the cause of action filed by the McNeills. On the basis of this affidavit, it is apparent that the issue of the boundary line was not litigated and that Carlton Izard refused to litigate this issue. Because of the refusal of the Izards to litigate the boundary line in the former cause of action of trespass on the basis of arguments diametrically opposed to the arguments on which the respondent now relies, it would be inherently unfair and unjust to invoke the doctrine

of *res judicata* at the respondent's request in the current case. Therefore, we find that the circuit court properly denied the respondent's motion to dismiss under the doctrine of *res judicata*.

We also note that the doctrine of collateral estoppel is not appropriate in this case. For the doctrine to be applicable, the actual issue must have been litigated in the prior adjudication. (*Lady v. Montgomery Ward & Co.* (1980), 80 Ill. App. 3d 69, 399 N.E.2d 346.) As we determined previously, the exact issue was not litigated in the two lawsuits, and the doctrine of collateral estoppel is not applicable.

The second issue raised by the respondent is that the circuit court lacked subject matter jurisdiction to appoint the commission of surveyors. The basis of her argument is the same as for her motion to dismiss under section 2—615, *i.e.*, that the statute was not to be used for the purpose of appointing a commission of surveyors to establish new boundary lines and corners. In other words, the court exceeded its statutory authority in appointing the commission. Given our decision in the prior issue of the motion to dismiss, the respondent's argument that the court lacked subject matter jurisdiction must fail. We concluded previously that the commission was not establishing new boundaries and corners but was reestablishing an existing interior boundary line based upon the government's original exterior boundaries and corners. Additionally, the statute grants the court the authority to appoint a commission when there is a dispute as to an established boundary line. The circuit court had jurisdiction to appoint a commission of surveyors in this case.

The last issue raised by the respondent is that the court's approval of the commission of surveyors' report and acceptance of the commission's plat of survey was against the manifest weight of the evidence. The respondent asserts that because the commission of surveyors failed to give credence to the acts and testimony of interested land owners, competent surveyors, and other record evidence concerning the boundaries and corners previously established, the commission's report and plat of survey were against the manifest weight of the evidence.

According to the case law, to conduct a survey of a disputed boundary line, a surveyor must first establish the exterior lines and corners of the section according to the original survey of the United States government and the government's corresponding field notes. (*Vinyard v. Vaught* (1985), 138 Ill. App. 3d 641, 485 N.E.2d 1131.) Further, the original lines, corners and boundaries established by the government survey are unchangeable. (*Dorsey v. Ryan* (1982), 110 Ill. App. 3d 577, 442 N.E.2d 689.) There are no set rules, beyond these

basic principles, which mandate a specified surveying procedure. (*Vinyard v. Vaught* (1985), 138 Ill. App. 3d 641, 485 N.E.2d 1131.) We do not find that the commission of surveyors' survey of the disputed boundary line violated these principles.

At the hearing on the respondent's objection to the commission of surveyors' report, Philip Huskey testified that he was one of the surveyors appointed by the court for this case. The other two surveyors appointed to the commission with him were Gale Hake and Buddy McEvers. It was Huskey's understanding that the commission's task was to survey and establish the boundary line between the east and west halves of the northwest quarter of section 4, township 3 south, range 9 west, and to show this boundary in relation to an existing gravel road.

Huskey explained that the survey was begun by first obtaining all the records they could find. They obtained the records from the courthouse in Monroe County, the records of surveyor David Sherrill, and the records of surveyor Les Benoy. Sherrill had surveyed this same boundary at the request of the respondent and her husband, and Benoy had surveyed this boundary at the request of the Kelches.

After obtaining the records, Huskey and his fellow commissioners went to the field to see what physical evidence of established corners they could find. According to Huskey, to survey the disputed boundary appropriately, the commission had to locate the existing outside government corners of the section in order to divide the northwest quarter of section 4. As a result of their search of the area, the commission located monuments at the west quarter corner of section 4 (an iron fence), at the south quarter corner of section 4 (an old stone), and at the southeast corner of section 4 (an old iron rod). Based upon reference documents, the commission determined that the east line boundary of section 4 intersected with the north line boundary of U.S. Survey 722. A stone on the north line of U.S. Survey 722 marked the spot where the east line of section 4 intersected the north line. The reference documents used by the commission also indicated that the east quarter corner of section 4 was 132 feet north of this stone. Thus, the commission reestablished the east quarter corner of section 4 by coming up 132 feet from the stone monument. At the end of their physical search, the commission had found the east quarter corner, the west quarter corner, and the south quarter corner of section 4. According to Huskey, their only remaining problem was to locate the north quarter corner, since they had found no physical evidence locating this corner. Huskey explained that, under the original government surveys, the only corners established by the government were

the quarter corners of a section. He also explained that if there was an error in the government's setting of a quarter corner, a surveyor cannot correct the error but must accept it. However, these same rules do not apply to the corners established by independent surveys.

In order to facilitate an understanding of Huskey's testimony, the following line drawing is provided to show where the quarter corners are on a section. It must be noted that this line drawing is not drawn to scale but is simply for explanatory purposes.

SECTION 4

To establish the north quarter corner, Huskey testified that their research showed that it had been the practice of the county surveyor in the early and mid-1800's to use as a common corner the quarter corner for the section above or the section below. Therefore, the commission concluded that the quarter corner of section 33 (the section above section 4) was the same corner for the north quarter corner of section 4. Based upon information from when the townships were originally laid out, the commission knew that stones were placed along the township lines every half mile. With guidance from these markers and the knowledge of the common quarter corners, they went to where they thought the south quarter corner of section 33 might be and dug two feet below the road surface running along the north line of section 4. In this spot, they found an old sandstone mon-

ument that they determined was the south quarter corner of section 33 and, correspondingly, the north quarter corner of section 4.

After locating the north quarter corner of section 4, the commission, pursuant to Federal instructions, then intersected section 4 by running lines from the east quarter corner to the west quarter corner and from the north quarter corner to the south quarter corner to establish the center of section 4 and to divide section 4 into the four quarters. Thus, the commission established the east and the south boundary lines of the northwest quarter of section 4.

Huskey further testified that the next problem the commission encountered was the establishment of the northwest corner of section 4. This corner caused problems as the information provided from prior surveys was conflicting as to the location of this corner. Huskey stated that according to Robert Gardner's 1955 survey of this area, there was a stone in this corner; however, the commission was unable to locate this stone. To locate this corner, the commission established the southwest corner of section 33, and from the government maps, it was evident that the northwest corner of section 4 was "0.18 change [sic], which is 11.88 feet" from the southwest corner of section 33. Therefore, the commission came 11.88 feet east from the southwest corner of section 33 and set the northwest corner of section 4 there. From the northwest corner, the commission was able to arrive at the north boundary and the west boundary of the northwest quarter of section 4. After establishing the boundaries of the northwest quarter of section 4, the commission divided the east and west halves of the quarter proportionately. The location of the boundary in relation to the roadway established that the roadway started on the Izard property at the north end of the east-west boundary, but moved onto the Kelch property at the south end of the disputed boundary.

Huskey explained that earlier surveys did not necessarily conform to the commission's survey, but that the other surveys likewise did not conform to each other. He also explained that if any of the boundary markers of previous surveys had been used, the western boundary of the northwest quarter would have moved eastward, invading the Izard property even more. On cross-examination, Huskey admitted he did not use the Gardner survey because Gardner had not followed government procedures in his survey.

Robert Gardner testified that he had surveyed the boundary in dispute in 1955. In his survey, he had had to locate the northwest corner of section 4. At that time, he had found an iron pin in that corner. From the northwest corner, he ran a line down to the southwest corner of section 4, picking up whatever corners he could. Gardner ex-

plained he ran the line "picking up the points as we came across them and adjusting the line to fit the points that were left." Gardner stated he got the "points" from his father's survey. Gardner admitted that if the T-post at the northwest corner was used as the location of that corner, the boundary between the east and west halves of the northwest quarter would move 3.89 feet east, farther into the Izard property.

Also at this hearing, Carlton Izard, Frederick Kelch and Elmer Schneider (a neighbor to the south of the Izard property) testified. Their testimony will not be reiterated as their statements did not substantiate or negate any of the evidence presented regarding the commission's survey.

After hearing this testimony, the court determined that the petitioners had established the disputed boundary line by a preponderance of the evidence. The court approved the commission's report of the survey and accepted the commission's plat of the survey. As was noted previously, the court also ordered that the plat of the survey be recorded in the office of the recorder of deeds.

From the foregoing evidence, we find that the court's approval of the commission's survey and the acceptance of the plat of survey were not against the manifest weight of the evidence. A review of the evidence indicates that Huskey followed the accepted principles of establishing the original government corners first and then locating the disputed boundary line in accordance with these corners.

For the foregoing reasons, the judgment of the circuit court of Monroe County is affirmed.

Affirmed.

HARRISON and WELCH, JJ., concur.